# 25-485

## United States Court of Appeals
## for the Second Circuit

ANTERO OLIVEIRA,

*Plaintiff-Appellant,*

*against*

LARRY SCHWARTZ, in his official capacity as statutory
pistol licensing officer for Westchester County,

*Defendant-Appellee,*

SUSAN CACACE, in her capacity as statutory licensing officer,
and Individually,

*Defendant.*

On Appeal from the United States District Court for the
Southern District of New York (White Plains)

## BRIEF FOR PLAINTIFF-APPELLANT

Amy L. Bellantoni
May 14, 2025

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiff-Appellant*
2 Overhill Road, Suite 400
Scarsdale, New York 10583
info@bellantoni-law.com

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................... i

JURISDICTIONAL STATEMENT ..................................................... 1

ISSUES PRESENTED FOR REVIEW .................................................. 1

STATEMENT OF THE CASE ............................................................. 2

STANDARD OF REVIEW ................................................................. 9

I. AS A MATTER OF NEW YORK STATE LAW, 'UPSTATE' LICENSING OFFICERS ARE NOT ACTING IN A JUDICIAL CAPACITY WHEN DECIDING WHETHER TO GRANT OR DENY A PISTOL LICENSE .............. 9

    A. The 'Pistol Licensing Officer' is Statutorily Created, Narrowly Defined, and an Administrative Function – Not a Judicial One .......... 10

    B. Upstate Licensing Officers Are Not Acting in a Judicial Capacity and the Licensing Process Under § 400.00 is Not a 'Court Action' .... 11

II. FEDERAL COURTS ARE BOUND TO DEFER TO THE STATE ................ 12

III. *LIBERTARIAN PARTY* CONFLICTS WITH NEW YORK STATE LAW ................................................................... 13

IV. THE SCOPE OF AUTHORITY OF EVERY PISTOL LICENSING OFFICER IS THE SAME ................................................................... 15

V. FEDERAL COURTS MAY PROPERLY ORDER STATE OFFICIALS TO COMPLY WITH FEDERAL LAW ...................................................... 16

    A. Pistol Licensing is Not a 'Judicial Act' .............................. 17

    B. The *Ex parte Young* Exception Applies .............................. 19

    C. Prospective Declaratory Relief is Proper ............................. 20

D.  The Licensing Process is Administrative, Not a
    'State Court Action' ............................................................ 22

E.  No "State Court Judgment"/No Appellate Review is Available ......... 23

F.  Judges Have No Common Law Authority to Issue
    Firearm Licenses ................................................................ 24

G. Licensing Officers are Creatures of Statute, Not Common Law ......... 24

VI. THE DISTRICT COURT ERRED WHEN HOLDING THAT PLAINTIFF'S
CLAIMS FOR  DECLARATORY RELIEF ARE 'RETROSPECTIVE' IN
NATURE ................................................................................. 25

VII. THE DISTRICT COURT ERRONEOUSLY HELD THAT 42 U.S.C. § 1983
BARS MR. OLIVEIRA'S  CLAIMS TO  ENJOIN
UNCONSTITUTIONAL STATE LAWS ............................................. 26

CONCLUSION ....................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antoine v. Byers & Anderson, Inc.*,
508 U.S. 429 (1993) ................................................................ 17

*Antonyuk v. Bruen*,
624 F. Supp. 3d 210 (N.D.N.Y. 2022) ................................... 21

*Baughcum v. Jackson*,
92 F.4th 1024 (11th Cir. 2024) ........................................ 18, 19

*Blouin ex rel. Est. of Pouliot v. Spitzer*,
356 F.3d 348 (2d Cir. 2004) ................................................. 24

*Brokamp v. James*,
573 F. Supp. 3d 696 (N.D.N.Y. 2021) ................................... 25

*Brown v. New York*,
975 F. Supp. 2d 209 (N.D.N.Y. 2013) ................................... 26

*Bush v. Palm Beach County Canvassing Bd.*,
531 U.S. 70 (2000) ................................................................ 12

*Cayuga Nation v Tanner*,
824 F.3d 321 (2016) .............................................................. 21

*Cnty. of Westchester v. D'Ambrosio*,
244 A.D.2d 334 (2d Dept. 1997) ..................................... 10, 13

*Ex parte Young*,
209 U.S. 123 (1908) ......................................................... 16, 17

*Federal Power Comm'n v. Idaho Power Co.*,
344 U.S. 17 (1952) ................................................................ 17

*Federal Radio Comm'n v. General Electric Co.*,
281 U.S. 464 (1930) .............................................................. 18

i

*Goldstein v. Galvin*,
719 F.3d 16 (1st Cir. 2013) ................................................................. 17

*Goldstein v. Schwartz*,
185 A.D.3d 929 (2d Dept. 2020) .......................................... 11, 12, 14

*Green v. Mansour*,
474 U.S. 64 (1985) ...................................................................... 21, 22

*Hedges v. Obama*,
724 F.3d 170 (2d Cir. 2013) ............................................................. 21

*In re Ayres*,
30 N.Y.3d 59 (2017) ......................................................................... 14

*In re Shuler*,
67 A.D.3d 1020 (2d Dept. 2009) ................................................ 11, 13

*Kelsey v. Clark*,
2023 WL 1980307 (2d Cir. Feb. 14, 2023) .................................. 20, 21

*LaCorte Elec. Const. & Maint., Inc. v. Centron Sec. Sys., Inc.*,
894 F. Supp. 80 (N.D.N.Y. 1995) ..................................................... 12

*Lander v. Hartford Life & Annuity Ins. Co.*,
251 F.3d 101 (2d Cir. 2001) ............................................................. 12

*Libertarian Party of Erie Cnty. v. Cuomo*,
970 F.3d 106 (2d Cir. 2020) ..................................................... 1, 2, 14

*Matter of Blackburne*,
7 N.Y.3d 213 (2006) ......................................................................... 15

*Matter of Cerbone*,
2 N.Y.3d 479 (2004) ......................................................................... 15

*Matter of George*,
22 N.Y.3d 323 (2013) ....................................................................... 15

*Matter of Panaro*,
250 A.D.2d 616 (2d Dept. 1998) ................................................. 11, 13

*Matter of Schnell v. Spano*,
120 A.D.2d 669 (2d Dept. 1986) ................................................ 11, 13

*Matter of Young*,
19 N.Y.3d 621 (2012) ........................................................ 15

*Miller v. Davis*,
123 F. Supp. 3d 924 (E.D. Ky. 2015) ................................................ 16

*Morrison v. Lipscomb*,
877 F.2d 463 (6th Cir. 1989) ........................................................ 17

*Pennhurst State School & Hospital v. Halderman*,
465 U.S. 89 (1984) ........................................................ 21

*Portalatin v. Graham*,
624 F.3d 69 (2d Cir. 2010) ........................................................ 12

*Pulliam v. Allen*,
466 U.S. 522 (1984) ........................................................ 21

*Quern v. Jordan*,
440 U.S. 332 (1979) ........................................................ 16

*Sibley v. Watches*,
194 A.D.3d 1385 (4th Dept. 2021) ................................................ 12

*Sonterra Cap. Master Fund Ltd. v. UBS AG*,
954 F.3d 529 (2d Cir. 2020) ........................................................ 9

*United States v. Fernandez-Antonia*,
278 F.3d 150 (2d Cir. 2002) ........................................................ 12

*Va. Office for Prot. and Advocacy v. Stewart*,
563 U.S. 247 (2011) ........................................................ 16

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
  535 U.S. 635 (2002) ............................................................. 26

*Whole Woman's Health*,
  595 U.S. 30 (2021) ................................................. 17, 19, 20

**Statutes**

28 U.S.C. § 1291 ...................................................................... 1
28 U.S.C. § 1331 ...................................................................... 1
42 U.S.C. § 1983 ......................................................... 7, 18, 26
N.Y.S. General Business Law § 898 ....................................... 2
N.Y.S. Judiciary Law § 140-b ............................................... 24
Pub. L. No. 104–317, 110 Stat. 3847.................................... 21

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................... 1, 7, 8, 9
N.Y. CPLR 506(b)(1)............................................................ 10
N.Y. CPLR 7801 .................................................... 10, 23, 25

**Regulations**

22 NYCRR 100.3(B)(6) ........................................................ 15

**Other Authorities**

The Process of Marriage Equality,
  43 Hastings Const. L.Q. 243 (2016) .................................. 16

iv

## JURISDICTIONAL STATEMENT

Subject matter jurisdiction was proper in the district court pursuant to 28 U.S.C. § 1331, as the causes of action arose from violations of the U.S. Constitution. The Opinion and Order appealed from, which dismissed the First Amended Complaint in full, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1), was entered by the Clerk of the Court on January 30, 2025. Appellant timely filed a Notice of Appeal on February 28, 2025. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1) Whether that part of this Court's decision in *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), abrogated by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) holding that New York State statutory pistol licensing officers outside of New York City, Nassau County, and Suffolk County are acting in a judicial capacity – and not an administrative capacity – when enforcing the state pistol licensing scheme, should be reversed and vacated as a matter of law as inconsistent with New York State Law, to which the federal courts are bound to defer.

2) Whether the district court erred when holding that 'declaring the unconstitutionality of a state statute' is 'retrospective' in nature, and not prospective

1

relief, when holding that the *Ex parte Young* exception is inapplicable to Appellant's Second Amendment challenge to state statutes.

STATEMENT OF THE CASE

Appellant, Antero Oliveira ("Mr. Oliveira"), is 51 years old, married, a homeowner, a business owner, and part of 'the People' for whom the Second Amendment was codified [A19].[1] Mr. Oliveira has no disqualifications to the possession, purchase, receipt, or transfer of firearms under state or federal law [*Id.*].

Mr. Oliveira owns rifles and shotguns, which he purchased through a federal firearms licensee (FFL/gun store) after passing federal background checks through the National Instant Criminal Background Check System (NICS) [*Id.*]. In fact, under New York State General Business Law § 898, every19 "sale, exchange or disposal" of a handgun, shotgun, and/or rifle must be conducted through an FFL/gun store and may only proceed after the purchaser is cleared by NICS [*Id.*].

To legally possess a handgun in New York, however, Mr. Oliveira is required to apply for and obtain a pistol license from one of the statutory pistol licensing officers in his county of residence [Penal Law § 265.00(10); § 400.00, *et seq.*].

By state law, the only people with authority to issue a pistol license are the statutorily created licensing officers. In New York City, Nassau County, and Suffolk

---

[1] Citations to the Appendix are noted herein as [A___].

County, the pistol licensing officers are the police commissioners[2]; elsewhere in the state, the licensing officers are judges of a court of record [§ 265.00(10)].

Seeking to possess handguns for self-defense, Mr. Oliveira submitted the required State application, documents, and payment to the Westchester County Clerk's Office in 2021 to obtain a pistol license; he was later fingerprinted and photographed, and his criminal history report was obtained from the FBI and the New York State Division of Criminal Justice Services [A20]. After the statutory investigation was performed, Mr. Oliveira's application was assigned to one of the Westchester County pistol licensing officers for a determination, County Court Judge Susan Cacace [A20].

Mr. Oliveira's application file demonstrated that he has never been convicted of a crime, has no mental health prohibitors to the possession of firearms, and has no objective disqualifiers to the possession of firearms under state or federal law – as evidenced by the fact that he has previously passed NICS background checks and already lawfully owns rifles and shotguns [A19-20].

But rather than issue a license to Mr. Oliveira – a person with no objective prohibitors to firearm possession- the licensing officer notified him by letter dated February 18, 2022 that she was considering denying his application and requested

---

[2] In certain towns in Suffolk County, the pistol licensing officer is the Suffolk County Sheriff. *See,* § 265.00(10).

3

additional information about some 'past allegations' [A20]. The licensing officer also noted that Mr. Oliveira's four (4) character references had no knowledge of such past allegations (which had never resulted in a criminal conviction), and sought "further assurances" that Mr. Oliveira's "character references have sufficient knowledge of your temperament and behavior to render a competent opinion as to your moral character..." [A20].

This consideration of unproven allegations, dismissed charges, and sealed arrests by the pistol licensing officers is made possible by the two statutes challenged by Mr. Oliveria below: (i) New York Executive Law § 296.00(16); and (ii) the "discretion" afforded by § 400.00(1)(b).

Mr. Oliveira provided the licensing officer with a written explanation of a verbal argument in 2016 with his wife, which took place in the Portuguese language, during which a neighbor (who does not speak Portuguese) called the police [A20-21]. The explanation informed the licensing officer that Mr. Oliveira's wife, who was upset that she was home with the baby all of the time, took the couple's infant daughter and walked out of the house, intending to walk to the home of a nearby friend, but Plaintiff continued the conversation outside – still in Portuguese – telling his wife that it was ridiculous to walk to her friend's house, and that she should just take the car [A21].

Making factual assessments, speculating, and opining that Mr. Oliveira suffered from a "novel, struggle with aggression and violence under circumstances that don't appear (without more information made available) to be related to his self-defense, and appear to be otherwise unjustified by the known attendant circumstances," the licensing officer denied Mr. Oliveira's application [A21].

The licensing officer went on to note that the "circumstances surrounding the applicant's two previous arrests are relevant to the Court's consideration of the merits of the instant application…irrespective of the dismissal of one series of charges and the disposition of the second and more recent set of charges by a negotiated plea to a violation-level offense…" citing various New York State Appellate Division cases [A21-22].

The licensing officer denied Mr. Oliveira's application, which she noted was "an exercise of [her] broad discretion…" because "without more information having been made available to mitigate" her opinion…she reached the "conclusion that the applicant does not possesses the necessary character, temperament, judgment and maturity that is required for the proper issuance of a New York State Pistol/Revolver License allowing him to carry and use a handgun for any purpose and which otherwise constitutes good cause for the denial of his present application" [A22].

In finding that Mr. Oliveira "does not possess the necessary character" to possess firearms, the licensing officer *de facto* denied the application under Penal Law 400.00(1)(b), which authorizes subjective assessments that an applicant is "of good moral character, which, for the purposes of this article, shall mean having the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others" [A22].

Mr. Oliveira intends to reapply for a pistol license, and would have already reapplied [A24], however the enforcement of N.Y. Executive Law § 296.00(16) and Penal Law § 400.00(1)(b), under which he has already been denied, have not been repealed and continue to be in full force and effect; his reapplication would be futile [A24-25].

Mr. Oliveira filed a complaint in the District Court for the Southern District of New York seeking, *inter alia*, a declaration that certain portions of N.Y. Exec. Law § 296.00(16), and the sole discretionary factor under the State's pistol licensing regime, Penal Law § 400.00(1)(b) violate the Second Amendment; he further sought the permanent injunction thereof.

Mr. Oliveira's complaint named Judge Cacace in her individual and official capacities [A1]. During the pendency of the case, however, Judge Cacace resigned from the bench prompting Mr. Oliveira to file a First Amended Complaint naming

her successor, the Hon. Larry Schwartz, in his official capacity as a statutory pistol licensing officer for Westchester County [A15].

The State's motion to dismiss followed.

### *The Opinion and Order Below*

The district court granted the State's motion to dismiss the First Amended Complaint with prejudice under Fed. R. Civ. P. 12(b)(1) based on (i) this Court's decision in *Libertarian Party*, which held that the statutory licensing officers outside of New York City, Nassau County, and Suffolk County are acting as judges when enforcing the state licensing regime and, therefore, entitled to absolute immunity from suit for Second Amendment violations [A59]; (ii) the conclusion that 42 U.S.C. § 1983 precludes lawsuits against state officials acting in a judicial capacity [A60-61]; and (iii) a finding that a judicial declaration that the challenged New York State statutes violate the Second Amendment is purely 'retrospective' in nature and not 'prospective' relief, such that the *Ex parte Young* exception to Eleventh Amendment immunity is inapplicable [A57-60].

According to the district court, the only process for Mr. Oliveira to challenge the constitutionality of a state statute on Second Amendment grounds exists in state court [A61].

**Relevant Proceedings Below**

On August 22, 2023, Mr. Oliveira filed a complaint in the United States District Court for the Southern District of New York, which was assigned to the Hon. Philip M. Halpern (the "complaint")[A2]. The complaint named the licensing officer who denied Mr. Oliveira's application, the Hon. Susan Cacace, in her individual and official capacities [A2; DE 1]. However, in light of her resignation, Mr. Oliveira filed a First Amended Complaint ("FAC") on January 26, 2024 naming the Hon. Larry Schwartz ("Justice Schwartz") in his official capacity as pistol licensing officer for Westchester County, as successor to Judge Cacace [A4; A6; DE 15].[3]

On April 19, 2024, counsel for Justice Schwartz, New York State Attorney General's Office (the "State") filed a Motion to Dismiss the FAC [A4; A28-A48; DE17-20] which was opposed by Mr. Oliveira [A4; A49-51;DE21-22].

By Opinion and Order dated January 30, 2025, the State's motion to dismiss the FAC was granted in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) [A52]. Mr. Oliveira timely filed a Notice of Appeal dated February 28, 2025 [A62]. This appeal follows.

---

[3] The individual capacity claims against Judge Susan Cacace were discontinued with the filing of the FAC.

8

STANDARD OF REVIEW

On an appeal from judgment under Rule 12(b)(1) of the Federal Rules of Civil Procedure, dismissing an action for lack of subject matter jurisdiction, this Court conducts a *de novo* review, accepting as true all material factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff. The plaintiff has no evidentiary burden under this analysis. *Sonterra Cap. Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533 (2d Cir. 2020).

## I. AS A MATTER OF NEW YORK STATE LAW, 'UPSTATE' LICENSING OFFICERS ARE NOT ACTING IN A JUDICIAL CAPACITY WHEN DECIDING WHETHER TO GRANT OR DENY A PISTOL LICENSE

Dismissing the FAC, the district court followed this Court's precedent in *Libertarian Party*, which held that the statutory licensing officers outside of New York City, Nassau County, and Suffolk County are acting in a judicial capacity when enforcing the State's pistol licensing statute, Penal Law § 400.00*, et seq.*

But neither the parties nor the Court in *Libertarian Party*, considered how New York State interprets the capacity in which the judicial licensing officers act when deciding whether to deny or grant a pistol license. And because federal courts are required to defer to a state's interpretation of its own laws, *Libertarian Party* must be reconsidered and, ultimately, overturned as inconsistent with New York State law.

9

**A.    The 'Pistol Licensing Officer' is Statutorily Created, Narrowly Defined, and an Administrative Function – Not a Judicial One**

Penal Law § 265.00(10) enumerates which government officers have authority to enforce New York State's pistol licensing scheme (Penal Law § 400.00) – the police commissioners for New York City, Nassau County, and Suffolk County ("Downstate") and judges of a court of record ("Upstate").

By § 265.00(10), the Legislature placed certain members of the judiciary (but not all judges) in the position of performing the administrative acts reserved for the executive branch - enforcing the State's handgun licensing regime from their chambers. But the location of the task does not change its executive and administrative nature.

New York's Appellate Courts and the New York State Civil Practice Laws and Rules (CPLR) have long-recognized that decisions made by Upstate licensing officers in the enforcement of Penal Law § 400.00 are made in an administrative capacity – and not a judicial capacity. *See*, *Cnty. of Westchester v. D'Ambrosio*, 244 A.D.2d 334, 334 (2d Dept. 1997) ("The appropriate procedure to seek review of a determination of a County Court Judge, *acting in his administrative capacity* as the firearms licensing officer for Westchester County under Penal Law §§ 400.00(11) and 265.00(10), is not by direct appeal but by commencement of a CPLR article 78 proceeding in the Appellate Division.") (emphasis added) citing CPLR 7801; CPLR

10

506(b)(1); *Matter of Schnell v. Spano*, 120 A.D.2d 669 (2d Dept. 1986), *In re Shuler*, 67 A.D.3d 1020 (2d Dept. 2009) (appropriate procedure for seeking review of a determination of a County Court Judge acting in "*administrative capacity* as the firearms licensing officer for Westchester County" is Article 78) (emphasis added); *Matter of Panaro*, 250 A.D.2d 616 (2d Dept. 1998) (appropriate procedure for seeking review of a determination of a County Court Judge acting in "*administrative capacity* as the firearms licensing officer for Westchester County" is Article 78) (emphasis added).

### B.  Upstate Licensing Officers Are Not Acting in a Judicial Capacity and the Licensing Process Under § 400.00 is Not a 'Court Action'

In *Goldstein v. Schwartz*, 185 A.D.3d 929, 930 (2d Dept. 2020), a pistol licensee brought an Article 78 proceeding against Justice Schwartz (the Appellee in this appeal) for (i) denying the licensee's application to amend his pistol license; and (ii) issuing a one-year injunction on the licensee's ability to reapply to have the restrictions removed.

Reversing Justice Schwartz's 1-year injunction on the licensee's ability to reapply, the Appellate Division, Second Department held that Upstate licensing officers are not acting as courts when enforcing § 400.00:

> "[T]he licensing officer was without authority to bar the petitioner from re-applying for an unrestricted pistol permit for one year…**the injunction was not imposed by a court but by a judge acting as a licensing officer**… The issuance of the injunction was beyond the

11

scope of his powers to either deny or grant the application (see Penal Law § 400.00[4–a] ).”

*Schwartz*, 185 A.D.3d at 930 (emphasis added).

The Fourth Department agreed. *See*, *Sibley v. Watches,* 194 A.D.3d 1385, 1389, 148 N.Y.S.3d 574, 579–80 (2021) (respondent was "acting as a licensing officer" not as a County Court judge "[t]hus, the issuance of an injunction was "beyond the scope of [respondent's] powers to either deny or grant the application").

Under existing New York State law, all judicial authority for Upstate licensing officers is checked at the proverbial door when they are wearing the "pistol licensing hat."

## II. FEDERAL COURTS ARE BOUND TO DEFER TO THE STATE

It is axiomatic that when interpreting state statutes, federal courts defer to the state courts' interpretation of their own statutes. *United States v. Fernandez-Antonia*, 278 F.3d 150, 162 (2d Cir. 2002) citing *Bush v. Palm Beach County Canvassing Bd.*, 531 U.S. 70, 76 (2000) (per curiam) ("As a general rule, this Court defers to a state court's interpretation of a state statute."); *Portalatin v. Graham*, 624 F.3d 69, 84 (2d Cir. 2010) ("Of course, we do not defer to [the New York Court of Appeals'] interpretation of federal law, but we are bound by its construction of New York law in conducting our analysis."); *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 119 (2d Cir. 2001) (noting that "we must defer to the [state] [s]upreme [c]ourt

12

on issues of state law"); *LaCorte Elec. Const. & Maint., Inc. v. Centron Sec. Sys., Inc.*, 894 F. Supp. 80, 81 (N.D.N.Y. 1995) (New York State's interpretation of its own statutory construct controls).

As noted above, the State Legislature placed certain members of the judiciary in a position of performing an executive branch administrative act of enforcing the State's firearms licensing regime. And while the separation between the executive branch and the judicial one has been compromised by this assignment of licensing authority, this Court is bound to defer to the State's interpretation, which necessarily requires a reversal of *Libertarian Party.*

## III. *LIBERTARIAN PARTY* CONFLICTS WITH NEW YORK STATE LAW

*Libertarian Party* was decided on a thin record devoid of any reference to New York State's interpretation of the licensing officers' capacity, which resulted in a conclusion that conflicts with state law.

For decades, New York State courts have recognized that the judicial licensing officers upstate are not acting as judges or courts when enforcing § 400.00 – they are acting in an *administrative* capacity. *See, Cnty. of Westchester v. D'Ambrosio*, 244 A.D.2d 334, 334 (2d Dept. 1997); *Matter of Schnell v. Spano*, 120 A.D.2d 669 (2d Dep't 1986); *In re Shuler*, 67 A.D.3d 1020 (2d Dept. 2009); *Matter of Panaro*, 250 A.D.2d 616 (2d Dept. 1998)].

13

And no licensing officer – judicial or otherwise – has authority to take action that is not proscribed by Penal Law § 400.00, *et seq.* – even acts considered judicial functions, like issuing an injunction. *See*, *Goldstein*, *supra.*[4]

*Libertarian Party's* discussion of absolute immunity was also particularly thin. While this Court found that the written denials were "judicial decisions" (which they could not be as a matter of New York State law), the factual basis boiled down to the same functions as a non-judicial licensing officer – the Downstate police commissioners; all licensing functions are imposed by statute. *See*, Penal Law § 400.00(4-a). Review of documents, consideration of an applicant's criminal history, rendering a determination, and providing a written basis for the denial and/or issuing a pistol license are all administrative duties required by § 400.00(1), (4-a).

And in *Libertarian Party,* the judge's act of "communicating with the United States Attorney for the Northern District of New York" concerning the plaintiff's license application[5] is antithetical to a judicial function, which forbids extrajudicial fact-finding to create or supplement the record before rendering a decision. *See, e.g., In re Ayres*, 30 N.Y.3d 59, 63–64 (2017) (it is a violation of a judge's solemn oath

---

[4] Notably, in *Libertarian Party* this Court observed that Judge Kehoe issued his denial of the plaintiff's pistol license application by letter, not by a 'judicial order' as Judge Cacace did here [A33; *but see*, A51 (denial letter issued by Westchester County licensing officer, Supreme Court Justice Robert A. Neary)]. *Libertarian Party*, 970 F.3d at 125. Conversely, a Decision and Order rendered in a litigated action would not be issued by the judge on chambers' letterhead. The two roles are distinctly different.

[5] *Libertarian Party*, 970 F.3d at 125.

14

to abandon the role of neutral decisionmaker or engage in *ex parte* communications on the merits of a case. As we have explained, both actions are fundamentally incompatible with the responsibilities of judicial office") citing *Matter of Blackburne*, 7 N.Y.3d 213, 221 (2006) (observing that, when "petitioner abandoned her role as neutral arbiter," she acted in a way "completely incompatible with the proper role of an impartial judge"]; *Matter of George*, 22 N.Y.3d 323, 330 (2013) (observing that engaging in *ex parte* communications about the merits of a case is "conduct ... antithetical to the role of a judge"); 22 NYCRR 100.3(B)(6) ("[a] judge shall not initiate ... *ex parte* communications"). Conduct that "creates or suggests the appearance of partiality is a misuse of the judicial office." *Id.* quoting *Matter of Young*, 19 N.Y.3d 621, 626 (2012). "[A] judge performing judicial duties must both act and appear to act as an impartial arbiter serving the public interest.... A judge who does not know this, and is not capable of learning it, should not be on the bench." *Matter of Cerbone*, 2 N.Y.3d 479, 485 (2004).

## IV. THE SCOPE OF AUTHORITY OF EVERY PISTOL LICENSING OFFICER IS THE SAME

The state's pistol licensing officers are creatures of statute, not common law, and their authority is specifically and narrowly defined by the state licensing regime. Licensing officers have no more authority than that granted by the Legislature.

It would be a silly argument to say that this Court has authority to declare that, when the Downstate police commissioners are acting in their capacity as pistol licensing officers they are imbued with judicial authority to, for instance, issue search warrants, injunctions on license reapplications, and seizure orders. So, too, is it untenable to declare that Upstate licensing officers are acting with judicial authority or 'as a court' when granting or denying a license under § 400.00.

Licensing officers, irrespective of their separate and distinct roles outside of enforcing § 400.00, have no greater authority than the administrative role defined by the Legislature.

## V. FEDERAL COURTS MAY PROPERLY ORDER STATE OFFICIALS TO COMPLY WITH FEDERAL LAW

The *Ex parte Young* doctrine permits a federal court to enjoin state officials to conform their future conduct to the requirements of federal law. *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "It rests on the premise - less delicately called a 'fiction,' - that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Office for Prot. and Advocacy v. Stewart*, 563 U.S. 247 (2011); see also, *Miller v. Davis*, 123 F. Supp. 3d 924, 933–34 (E.D. Ky. 2015) (enjoining court clerk, who refused to issue any same-sex marriage licenses, from violating the plaintiffs' federal constitutional rights). See also, Josh Blackman & Howard M. Wasserman, The Process of Marriage Equality,

16

43 Hastings Const. L.Q. 243, 245 (2016) (discussing, *inter alia*, federal district courts authority to enjoin the states' enforcement of bans on same-sex marriage); *Whole Woman's Health*, 595 U.S. 30, 39 (2021) ("To be sure, in *Ex parte Young*, this Court recognized a narrow exception grounded in traditional equity practice— one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law").

### A. Pistol Licensing is Not a 'Judicial Act'

Judicial acts are those that are 'intimately associated' with the judicial function, the bedrock of which is the adjudication of disputes. *Goldstein v. Galvin*, 719 F.3d 16, 25 (1st Cir. 2013).

Other traditional judicial functions include such things as weighing evidence, making factual findings, reaching legal determinations, choosing sanctions, and expounding reasons for decisions. *Goldstein*, 719 F.3d at 25 (cleaned up) (citations omitted); *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36 (1993) ('touchstone' for judicial immunity has been "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights").

From a functional standpoint, pistol licensing is an "act that simply happens to be done by judges" in upstate New York; it is not a "truly judicial act." *Morrison*

17

*v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989). *See also*, *Federal Power Comm'n v. Idaho Power Co.*, 344 U.S. 17 (1952) (modification of license not a judicial function); *Federal Radio Comm'n v. General Electric Co.*, 281 U.S. 464 (1930) (licensing is not a judicial function; judgment requiring Federal Radio Commission to renew broadcasting license was not reviewable by Supreme Court, since proceeding was not "case or controversy").

Pistol licensing – as a matter of law -  cannot be a "judicial act" because it is also performed by police commissioners and their designees – non-judicial, executive branch officials with identical authority under the same statute.

In *Baughcum v. Jackson*, the Eleventh Circuit considered whether a probate court judge was acting in a judicial capacity when deciding an application for a pistol license. 92 F.4th 1024, 1029 (11th Cir. 2024). The defendant judges argued that a federal court cannot redress the plaintiffs' injuries with an injunction against them because 42 U.S.C. § 1983 generally forbids an injunction against "a judicial officer for an act or omission taken in such officer's judicial capacity." To the extent that issuing a carry license is a judicial function, any order the trial court entered against them could not legally redress the plaintiffs' injuries because the judges would be immune. *Baughcum*, 92 F.4th at 1032–33.

The Eleventh Circuit disagreed with the judges and held that declaratory and injunctive relief against the probate judges was proper. The court reached its

decision by looking to how Georgia defined the probate judge's conduct: under Georgia state law, processing a weapons carry license was an administrative function the legislature just happened to assign to probate judges. *Baughcum*, 92 F.4th at 1033. "Because the probate judges are responsible for issuing licenses, the challenged action is also redressable by a court order against them. The district court could, if the suit is meritorious, order the probate judges to issue licenses to the plaintiffs." *Baughcum*, 92 F.4th at 1032.

Similarly, the New York legislature imposed the administrative duty of pistol licensing upon certain judges – and, as discussed above, New York State has interpreted the licensing role as administrative, not judicial.

### B. The *Ex parte Young* Exception Applies

In *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021), the Supreme Court noted that the *Ex parte Young* exception does not normally permit federal courts to issue injunctions against state-court judges or clerks because those individuals "do not usually enforce state laws as executive officials might; instead, they work to resolve disputes between parties. If a state court errs in its rulings, too, the traditional remedy has been some form of appeal, including to this Court, not the entry of an *ex ante* injunction preventing the state court from hearing cases." *Id.*

However, New York's pistol licensing officers – police commissioner and judicial alike - *do* "enforce state laws as executive officials" – and they decidedly *do*

19

*not* "work to resolve disputes between parties" in their licensing role. *See, Whole Woman's Health*, 595 U.S. at 39.

The Supreme Court also noted the distinction between allowing federal courts to enjoin "state executive officials from enforcing state laws that are contrary to federal law" and the general prohibition on issuing injunctions against state-court judges and clerks. And, after finding that the judges and court clerks *in that case* were not proper parties (because they were not involved in any enforcement), the Supreme Court went on to hold that the licensing-official defendants who take enforcement actions under the challenged statute were properly sued. *Whole Woman's Health,* 595 U.S. at 46.

Likewise, "licensing-official defendant" Justice Schwartz enforces the challenged statutes, is properly sued, and is subject to injunctive relief in his capacity as a pistol licensing officer.

## C. Prospective Declaratory Relief is Proper

Mr. Oliveira's official capacity claims against Justice Schwartz seek prospective declaratory and injunctive relief against state statutes for the ongoing and continued violation of his Second Amendment rights.

This Court has held that judicial immunity does not preclude "purely prospective declaratory relief." *Kelsey v. Clark*, No. 22-22, 2023 WL 1980307, at *1 (2d Cir. Feb. 14, 2023) (citation omitted); *Libertarian Party*, at 123 ("the

20

Eleventh Amendment does not bar a federal court, in adjudicating federal claims against state officials in any capacity, from granting prospective injunctive relief"); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 105 (1984).

In *Kelsey*, this Court observed that the "doctrine of judicial immunity has never barred plaintiffs from seeking purely prospective declaratory relief." *Kelsey*, at *1 quoting *Pulliam v. Allen*, 466 U.S. 522, 536 (1984), superseded by statute on other grounds; also at 541–42 ("We conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity"); Federal Courts Improvement Act of 1996, Pub. L. No. 104–317, 110 Stat. 3847; *Green v. Mansour*, 474 U.S. 64, 65, 73 (1985) (emphasis supplied).

As a statutory licensing officer, Justice Schwartz enforces the State's pistol license regime [*see*, *Antonyuk v. Bruen*, 624 F. Supp. 3d 210, 232 (N.D.N.Y. 2022) (governor and attorney general were not proper defendants because they are not involved in the enforcement of the challenged state regulations) (citing cases)], which includes consideration of the challenged Executive Law § 296.00(16) information to decide whether or not to deny a licensing application.

Mr. Oliveira also established a continuing harm from an ongoing action - the absolute barrier to protected conduct by the enforcement of the challenged statutes. *See, Cayuga Nation v Tanner*, 824 F.3d 321, 331 (2016) (quoting *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013) (courts are generally apt to presume that "the

21

government will enforce the law as long as the relevant statute is recent and not moribund").

The district court's conclusion that Mr. Oliveria failed to establish any prospective ongoing violations of federal law should be rejected as unsound. "Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law…But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

Mr. Oliveira is not required to repeatedly subject himself to the challenged statutes to have standing.

### D.  The Licensing Process is Administrative, Not a 'State Court Action'

Applying for and obtaining a firearm license is an administrative process, not a court action or proceeding. The process is commenced by filing an application with the licensing officer, the applicant is fingerprinted, the "duly constituted police authority" conducts a background investigation including obtaining the applicant's FBI and NY State criminal history report, and the results of the investigation are forwarded to the licensing officer for a decision. *See.* Penal Law § 400.00. The licensing officer determines whether the applicant is 'eligible' to hold a license under

section § 400.00(1) and either issues the license or denies the application. There is no Index number assigned, no pleadings filed, no discovery or motion practice, no trial, the rules of civil procedure do not apply, there is no plaintiff or defendant, no 'injured party' seeking relief from a court, and no adjudication of a dispute.

### E. No "State Court Judgment"/No Appellate Review is Available

There is no 'judgment' issued by a licensing officer. The licensing officer must either grant the license applied for, or deny the application for reasons specifically and concisely stated in writing. Penal Law § 400.00 4-b.

In contrast, judgments are appealed. A state court 'judgment' is challenged by filing a Notice of Appeal within 30 days of the Notice of Entry and perfecting the appeal in the Appellate Division.

But licensing determinations are challenged through a statutorily-created 'special proceeding' to challenge decisions of a "body or officer" under CPLR 7801, *et seq.,* which must be commenced within 4 months ("Article 78"). Article 78 cannot be used to challenge a judicial opinion, ruling, or judgment. *See,* CPLR 7801.

Mr. Oliveira stands in the same shoes as the individuals denied by the licensing officers in New York City, Nassau County and Suffolk County – he is an applicant, not a litigant.

### F.  Judges Have No Common Law Authority to Issue Firearm Licenses

The judiciary has no general jurisdiction over licensing firearms. Justice Schwartz's role as a state court judge is governed by the New York State Judiciary Law, which makes no reference to "licensing."[6]

And in its motion to dismiss, the State submitted copies of Justice Schwartz's biography [A39] and his individual rules detailing the procedures of his court [A41]. Neither document so much as hints at the pistol licensing process, underscoring the fact that the two roles are explicitly differentiated.

### G. Licensing Officers are Creatures of Statute, Not Common Law

Handgun licensing officers derive their authority from statute, not from common law.[7] Indeed, there was no such thing as a 'license requirement' to possess arms in the Founding Era. Nor is there any 'remedy at common law' for the denial of a pistol license, as there is for litigants aggrieved by a court order or judgment.

---

[6] The general jurisdiction in law and equity which the supreme court possesses under the provisions of the constitution includes all the jurisdiction which was possessed and exercised by the supreme court of the colony of New York at any time, and by the court of chancery in England on the fourth day of July, seventeen hundred seventy-six, with the exceptions, additions and limitations created and imposed by the constitution and laws of the state. Subject to those exceptions and limitations the supreme court of the state has all the powers and authority of each of those courts and may exercise them in like manner. N.Y. Judiciary Law § 140-b (McKinney).

[7] Nor did the State carry the burden of identifying any common law support for this theory. The existence of Penal Law § 265.00(10) demonstrates that there is "no historical or common-law support for the application of absolute immunity" to government officials who license the possession of common weapons. See, e.g., *Blouin ex rel. Est. of Pouliot v. Spitzer*, 356 F.3d 348, 357 (2d Cir. 2004) (defendants have not carried their burden of identifying any historical or common-law support for absolute immunity).

As noted above, aggrieved pistol license applicants must seek limited redress through a state-created special proceeding under CPLR 7801, *et seq.* (Article 78).

## VI. THE DISTRICT COURT ERRED WHEN HOLDING THAT PLAINTIFF'S CLAIMS FOR DECLARATORY RELIEF ARE 'RETROSPECTIVE' IN NATURE

The FAC seeks, among other relief, a judicial declaration that § 400.00(1)(b) and certain disclosure provisions of Penal Law § 296.00(16) violate the Second Amendment.

The district court held that such relief as "retrospective" in nature because Mr. Oliveira does not have any "pending" firearm applications [A59-60]. But there is no legal requirement that Mr. Oliveira continue to reapply for a license when he has already subjected himself to the licensing requirements and been denied [A24-25].

In holding that Mr. Oliveira's claims for injunctive and declaratory relief are retrospective in nature, the district court relied on a case that contradicts its own conclusion [A60]. In *Brokamp v. James*, 573 F. Supp. 3d 696 (N.D.N.Y. 2021), aff'd, 66 F.4th 374 (2d Cir. 2023), the plaintiff sought "a permanent injunction prohibiting defendants from applying New York's licensing requirements and an order declaring New York's licensing law for mental health counselors unconstitutional." This Court affirmed the Northern district court's conclusion that such "requests are prospective and satisfy *Ex parte Young*'s second prong," a conclusion contrary to that reached by the district court below. *Brokamp*, 573 F.

25

Supp. 3d at 709, citing, *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 636 (2002) ("[plaintiff's] prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies our 'straightforward inquiry' [for an *Ex parte Young* analysis]"); *Brown v. New York*, 975 F. Supp. 2d 209, 226 (N.D.N.Y. 2013) (holding that plaintiffs' request for an order declaring statute unconstitutional sought prospective relief).

## VII. THE DISTRICT COURT ERRONEOUSLY HELD THAT 42 U.S.C. § 1983 BARS MR. OLIVEIRA'S CLAIMS TO ENJOIN UNCONSTITUTIONAL STATE LAWS

Observing that § 1983, as amended in 1996, precludes injunctive relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity," the district court dismissed Mr. Oliveira's claims for injunctive relief against § 400.00(1)(b) and § 296.00(16).

But the district court's conclusion was tethered to the idea that the licensing officers are acting in a judicial capacity when performing their licensing duties which, as discussed at length above, is not the case.

Because licensing officers are acting in an administrative capacity, and not a judicial capacity, § 1983 creates no barrier to Mr. Oliveira's claims for injunctive relief against the enforcement of the challenged statutes by the State's licensing officers, if such statutes are determined to violate the Second Amendment.

## CONCLUSION

The Opinion and Order of appealed from should be reversed in its entirety.

Dated: May  14, 2025

Respectfully submitted,

*Amy L. Bellantoni*

Amy L. Bellantoni
*Attorney for Appellant*
The Bellantoni Law Firm, PLLC
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7). It contains 6,736 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated: May 14, 2025