# 25-485

## United States Court of Appeals for the Second Circuit

---

ANTERO OLIVEIRA,

*Plaintiff-Appellant*,

v.

LARRY SCHWARTZ, in his official capacity as a statutory pistol licensing officer for Westchester County,

*Defendant-Appellee*,

SUSAN CACACE, in her capacity as statutory licensing officer, and individually,

*Defendant*.

---

On Appeal from the United States District Court
for the Southern District of New York

---

## BRIEF FOR APPELLEE

---

BARBARA D. UNDERWOOD
  *Solicitor General*
PHILIP J. LEVITZ
  *Senior Assistant Solicitor General*
ANTHONY R. RADUAZO
  *Assistant Solicitor General*
    *of Counsel*

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellee
28 Liberty Street
New York, New York 10005
(212) 416-6159

Dated: June 18, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................iii

PRELIMINARY STATEMENT................................................... 1

ISSUES PRESENTED ................................................................ 3

STATEMENT OF THE CASE ................................................... 4

    A.   New York's Firearms-Licensing Procedures ............................ 4

    B.   Factual Background.................................................. 7

        1.   Oliveira's application for a pistol license ......................... 7

        2.   Oliveira's federal lawsuit against the judge who denied his license application......................................... 11

        3.   The district court's dismissal of the lawsuit ................... 12

SUMMARY OF ARGUMENT .................................................. 14

ARGUMENT ........................................................................ 18

POINT I

    THE DISTRICT COURT CORRECTLY DISMISSED THIS LAWSUIT AS BARRED BY THE ELEVENTH AMENDMENT AND JUDICIAL IMMUNITY UNDER SECTION 1983 ......................................................... 18

    A.   The Eleventh Amendment Bars All of Oliveira's Claims. ..... 18

        1.   The *Ex parte Young* exception does not apply to claims against state-court judges................................ 19

        2.   The *Ex parte Young* exception does not apply to the relief sought here.................................................... 29

**Page**

B.    Judicial Immunity Under Section 1983 Bars Oliveira's Claims for Injunctive Relief. ................................... 31

POINT II

THIS COURT MAY AFFIRM THE DISMISSAL OF OLIVEIRA'S CLAIMS ON ALTERNATIVE GROUNDS ................................... 33

A.    Oliveira's Claims Are Barred by the *Rooker-Feldman* Doctrine. ................................... 33

B.    Oliveira Lacks Standing to Bring His Claims Against the Defendant State-Court Judge. ........................... 35

CONCLUSION ................................... 38

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Antonyuk v. James,*
   120 F.4th 941 (2d Cir. 2024)...................................................... 6, 22, 31

*Baughcum v. Jackson,*
   92 F.4th 1024 (11th Cir. 2024) ........................................................ 22

*Bliven v. Hunt,*
   579 F.3d 204 (2d Cir. 2009) .................................................. 22, 25, 28

*Butz v. Economou,*
   438 U.S. 478 (1978)........................................................................ 26

*Carter v. HealthPort Techs., LLC,*
   822 F.3d 47 (2d Cir. 2016) ................................................................ 7

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983).......................................................................... 30

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)........................................................................ 35

*Deem v. DiMella-Deem,*
   941 F.3d 618 (2d Cir. 2019) ............................................................ 21

*DiFolco v. MSNBC Cable L.L.C.,*
   622 F.3d 104 (2d Cir. 2010) .............................................................. 7

*Ex parte Young,*
   209 U.S. 123 (1908)........................................................ 12, 19-20, 23

*Fastag v. Kelly,*
   No. 04-cv-9037, 2005 WL 1705529 (S.D.N.Y. July 19, 2005)............. 35

*Forrester v. White,*
   484 U.S. 219 (1988).................................................................. 27, 32

iii

**Cases**                                                           **Page(s)**

*Hoblock v. Albany Cnty. Bd. of Elections,*
422 F.3d 77 (2d Cir. 2005) ............................................................. 33-34

*Idlibi v. Burgdorff,*
Nos. 23-838, 23-7384, 2024 WL 3199522 (2d Cir. June 27, 2024) ...... 20

*In re Deposit Ins. Agency,*
482 F.3d 612 (2d Cir. 2007) .............................................................. 31

*In re Justices of Sup. Ct. of P.R.,*
695 F.2d 17 (1st Cir. 1982) ............................................................... 36

*In re Terrorist Attacks on Sept. 11, 2001,*
714 F.3d 109 (2d Cir. 2013) .............................................................. 33

*Libertarian Party of Erie Cnty. v. Cuomo,*
970 F.3d 106 (2d Cir. 2020) .......................................... 2, 18, 21-22, 32

*Lindke v. Tomlinson,*
31 F.4th 487 (6th Cir. 2022) ............................................................. 37

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ........................................................................ 38

*Matter of Cnty. of Westchester v. D'Ambrosio,*
244 A.D.2d 334 (2d Dep't 1997) ....................................................... 28

*Matter of Goldstein v. Schwartz,*
185 A.D.3d 929 (2d Dep't 2020) ....................................................... 28

*Matter of Hassig v. Nicandri,*
2 A.D.3d 1118 (3d Dep't 2003) ........................................................... 6

*Matter of O'Brien v. Keegan,*
87 N.Y.2d 436 (1996) ......................................................................... 6

*Matter of Panaro (Cnty. of Westchester),*
250 A.D.2d 616 (2d Dep't 1998) ..................................................... 27-28

iv

| Cases | Page(s) |
|---|---|

*Matter of Shuler,*
  67 A.D.3d 1020 (2d Dep't 2009) ........................................................ 27

*Matter of Sibley v. Watches,*
  194 A.D.3d 1385 (4th Dep't 2021) .................................................... 28

*Matter of Unger v. Rozzi,*
  206 A.D.2d 974 (4th Dep't 1994) ...................................................... 25

*Mitchell v. Fishbein,*
  377 F.3d 157 (2d Cir. 2004) ............................................................. 34

*Montero v. Travis,*
  171 F.3d 757 (2d Cir. 1999) ........................................................ 26-27

*Morales v. Trans World Airlines, Inc.,*
  504 U.S. 374 (1992) .......................................................................... 23

*Munoz v. Superior Ct. of L.A. Cnty.,*
  91 F.4th 977 (9th Cir. 2024) ............................................................ 20

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022) ................................................................................ 6

*O'Neal v. Mississippi Bd. of Nursing,*
  113 F.3d 62 (5th Cir. 1997) .............................................................. 26

*Paulk v. Kearns,*
  No. 21-cv-622, 2021 WL 1985884 (W.D.N.Y. May 18, 2021) ............ 35

*Pearlman v. Vigil-Giron,*
  71 F. App'x 11 (10th Cir. 2003) ....................................................... 31

*Pulliam v. Allen,*
  466 U.S. 522 (1984) .................................................................... 32, 36

*Reule v. Jackson,*
  114 F.4th 360 (5th Cir. 2024) .......................................................... 37

**Cases**                                                    **Page(s)**

*Rodriguez v. Weprin,*
    116 F.3d 62 (2d Cir. 1997) ................................................ 23

*Romano v. Bible,*
    169 F.3d 1182 (9th Cir. 1999) ......................................... 26

*Salu v. Miranda,*
    830 F. App'x 341 (2d Cir. 2020) ..................................... 30

*Santiago v. New York State Dep't of Corr. Servs.,*
    945 F.2d 25 (2d Cir. 1991) ............................................. 19

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ......................................................... 36

*T.W. v. New York State Bd. of L. Exam'rs,*
    110 F.4th 71 (2d Cir. 2024) ........................................ 29-30

*United States v. Rahimi,*
    602 U.S. 680 (2024) ........................................................... 6

*Vega v. Semple,*
    963 F.3d 259 (2d Cir. 2020) ........................................... 31

*Walczyk v. Rio,*
    496 F.3d 139 (2d Cir. 2007) ........................................... 26

*Ward v. Thomas,*
    207 F.3d 114 (2d Cir. 2000) ........................................... 29

*Whole Woman's Health v. Jackson,*
    595 U.S. 30 (2021) ................................... 19-20, 24, 35-36

*Will v. Michigan Dep't of State Police,*
    491 U.S. 58 (1989) ........................................................... 18

*Williams v. New York City Hous. Auth.,*
    816 F. App'x 532 (2d Cir. 2020) ...................................... 7

vi

**Cases**                                                                    **Page(s)**

*Williams v. Parkih,*
No. 24-3059, 2024 WL 5355086 (6th Cir. Sept. 4, 2024) .................... 20

**Laws**

42 U.S.C. § 1983 ................................................................... 16, 32

Federal Courts Improvement Act of 1996, Pub. L. No. 104-317,
110 Stat. 3847 ....................................................................... 32

C.P.L.R.
506 ...................................................................................... 25
art. 56 ................................................................................. 25
7801 et seq. ......................................................................... 14
7803 .................................................................................... 25
7804 .................................................................................... 25

Penal Law
§ 265.00 ............................................................................ 4, 7
§§ 265.01-265.04 ............................................................. 4, 23
§ 265.20 ........................................................................... 4, 23
§ 400.00 ....................................................................... 4-5, 22

**Miscellaneous Authorities**

New York Unified Ct. Sys., *9th JD – Rockland County* (n.d.),
https://ww2.nycourts.gov/COURTS/9jd/Rockland/rocklandsu
preme.shtml .......................................................................... 11

New York Unified Ct. Sys., *2025 First Term Assignments* (Jan.
6, 2025), https://www.nycourts.gov/LegacyPDFS/
courts/9jd/AssignTerms/2025/2025_1st_term.pdf .............................. 11

S. Rep. 104-366 (1996) ............................................................ 32

## PRELIMINARY STATEMENT

Plaintiff Antero Oliveira commenced this action against the New York state judge who denied his application for a pistol license after Oliveira refused to provide information concerning his involvement in two violent incidents that were not disclosed in his application.[1] Oliveira's operative complaint, filed pursuant to 42 U.S.C. § 1983, alleges that the license denial violated his Second and Fourteenth Amendment rights. As relief, Oliveira seeks an order directing that his pistol-license application be granted, and a declaration that the license denial was unconstitutional. The U.S. District Court for the Southern District of New York (Halpern, J.) dismissed Oliveira's complaint after concluding that Oliveira's claims were barred by the Eleventh Amendment and the plain text of 42 U.S.C. § 1983.

This Court should affirm. The Eleventh Amendment forecloses all of Oliveira's claims because the defendant judge is an agent of the State for purposes of sovereign immunity and is named in the complaint solely

---

[1] Oliveira's complaint initially named Judge Susan Cacace, who denied Oliveira's license application, as the defendant. Upon Judge Cacace's retirement from the bench, Oliveira amended his complaint to name Justice Larry Schwartz as the defendant. (*See* Appendix (A.) 6, 20-21.)

in an official capacity. Oliveira cannot rely on the *Ex parte Young* exception to Eleventh Amendment immunity, which applies only to lawsuits that seek to enjoin state executive officials from taking future enforcement actions that conflict with federal law. *Ex parte Young* does not apply to actions like Oliveira's against state-court judges because judges are not executive officials and do not enforce state laws. While Oliveira contests the judicial nature of the judge's license determination here, his argument is squarely foreclosed by this Court's precedent in *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, 125 (2d Cir. 2020). In any event, the *Ex parte Young* immunity exception also does not apply for the independent reason that Oliveira is seeking to redress past alleged harm in the denial of a license to him, not to enjoin the defendant judge from imposing future harms.

The district court also correctly concluded that Oliveira's claims for injunctive relief are separately barred by the judicial immunity codified in 42 U.S.C. § 1983. That form of immunity precludes section 1983 actions against state-court judges for acts taken in their judicial capacities, subject only to exceptions that do not apply here.

2

Moreover, this Court may affirm for at least two independent alternative reasons not reached below. First, under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to consider Oliveira's claims, which effectively ask this Court to engage in a collateral review of a state-court judgment on his pistol-license application—a judgment that could have been reviewed in state court. And second, Oliveira lacks standing to pursue his section 1983 claims against a judge who is not adverse to Oliveira, has no stake in the outcome of Oliveira's license proceedings, did not personally deny Oliveira's license application, and does not currently decide license applications at all.

## ISSUES PRESENTED

1. Whether the district court properly determined that the Eleventh Amendment and judicial immunity under section 1983 bar Oliveira's claims against the defendant state-court judge.

2. Whether dismissal of Oliveira's complaint may be affirmed for the independent alternative reasons that this Court lacks jurisdiction to consider Oliveira's claims under the *Rooker-Feldman* doctrine, and Oliveira lacks standing to pursue his claims against the defendant state-court judge.

3

## STATEMENT OF THE CASE

### A.  New York's Firearms-Licensing Procedures

Under most circumstances, it is a criminal offense to possess a firearm in the State of New York without first obtaining a state-issued license. *See* Penal Law §§ 265.01-265.04 (generally prohibiting possession of firearms); *see also id.* § 265.20(a)(3) (generally exempting license holders from criminal liability).

To qualify for a firearms license, an individual must be at least twenty-one years of age, not have a criminal record involving a felony or other serious offense, and possess "good moral character." *See* Penal Law § 400.00(1). "[G]ood moral character" is defined as "the essential character, temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others." *Id.* § 400.00(1)(b). Applications for a firearms license are adjudicated by local licensing officers. In most parts of New York, the local licensing officer is a "judge or justice of a court of record having his office in the county of issuance." *Id.* § 265.00(10). However, in New York City, Nassau County, and Suffolk County, designated local police officials serve as licensing officers. *Id.* Several types of firearms licenses are available in

4

New York, including a license to possess and carry a pistol or revolver (i.e., a "pistol license"). *Id.* § 400.00(2).

An individual applying for a pistol license must submit a signed and verified application, demonstrating that the applicant meets the statutory criteria for eligibility, to the designated county licensing officer. *Id.* § 400.00(3). The application must also disclose the name and contact information of (1) the applicant's spouse or domestic partner, (2) all of the applicant's adult cohabitants, and (3) at least four references who are able to attest to the applicant's good moral character. *See id.* § 400.00(1)(o)(i)-(ii). In addition, the applicant is required to provide further information requested by the licensing officer that is "reasonably necessary and related to the review of the licensing application." *Id.* § 400.00(1)(o). Law enforcement officials also conduct a background check of the applicant's criminal record and history of mental illness. The results of that investigation are reported to the licensing officer. *See id.* § 400.00(4).

If the application is approved by the licensing officer, the applicant is issued a license, which is valid for three years. *See id.* § 400.00(10)(d). If the application is denied, an individual may obtain further review of that denial by filing a proceeding under article 78 of New York's Civil

5

Practice Law and Rules. *See Matter of O'Brien v. Keegan*, 87 N.Y.2d 436, 439-40 (1996). Where the licensing adjudication is performed by a local judge or justice, the article 78 proceeding is brought directly in the Appellate Division of New York Supreme Court. *See Matter of Hassig v. Nicandri*, 2 A.D.3d 1118, 1119 (3d Dep't 2003) (citing C.P.L.R. 506(b)(1)).

In 2024, this Court largely affirmed New York's firearms-licensing scheme—including the good-moral-character and related disclosure requirements—as facially constitutional under the Second Amendment and consistent with the Supreme Court's decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024). *See Antonyuk v. James*, 120 F.4th 941, 976 (2d Cir. 2024).

## B. Factual Background

### 1. Oliveira's application for a pistol license

Oliveira is a resident of Westchester County, New York, who applied for a pistol license in 2021.[2] (A. 8, 19-20.) Oliveira's application was assigned to Westchester County Court Judge Susan Cacace (*see* A. 20), whose duties included adjudicating applications for firearms licenses, *see* Penal Law § 265.00(10).

The Westchester County Department of Public Safety (WCDPS) subsequently investigated Oliveira's criminal record. (*See* A. 20, 33-34.) That investigation revealed a 2016 incident—not previously disclosed in Oliveira's application materials—in which Oliveira was arrested and charged with unlawful imprisonment in the second degree, menacing in

---

[2] The following factual background is drawn from Oliveira's amended complaint, along with Judge Cacace's licensing decision and the New York Unified Court System profile for Justice Larry Schwartz. (*See* A. 6-27, 30-39.) The latter documents may be considered by this Court because they were submitted in support of defendants' motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and were uncontroverted, *see Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016), and are public records that this Court may judicially notice, *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020). The licensing decision may be considered for the additional reason that it is incorporated by reference in the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). (*See, e.g.*, A. 21.)

the third degree, and harassment in the second degree after Oliveira physically attacked his wife in the presence of their minor daughter. In connection with that incident, Oliveira's wife and daughter obtained a temporary order of protection against Oliveira, and Oliveira pleaded guilty to the harassment charge as part of a negotiated plea agreement. (*See* A. 33-34.) Oliveira's sentence included a one-year conditional discharge and the issuance of a final order of protection for a two-year term. (*See* A. 34.) The WCDPS investigation also uncovered a separate violent incident from several years earlier, in which Oliveira physically assaulted a client of his electrical business. Following this earlier incident, the client secured a temporary order of protection against Oliveira, and Oliveira was charged with criminal mischief in the fourth degree and harassment in the second degree, although the criminal charges were later dismissed. (*See* A. 34.)

In February 2022, Judge Cacace requested that Oliveira supplement his license application with additional information concerning the two violent incidents, including an accounting of the conduct toward his wife and minor child that gave rise to Oliveira's arrest and subsequent guilty plea. (*See* A. 20, 34.) Judge Cacace also requested that Oliveira provide

"further assurances" that his character references—none of whom expressed awareness of Oliveira's past incidents of physical violence— had adequate knowledge of Oliveira's temperament and behavior to competently opine as to his fitness for a pistol license. (*See* A. 20; *see also* A. 34-35.)

Oliveira, through counsel, responded by sending a letter to the court in July 2022. Rather than provide the requested information and assurances, Oliveira's letter asserted that his criminal history was irrelevant to the court's consideration of his license application. After Judge Cacace provided several additional opportunities and extensions of time to allow Oliveira to provide the requested information, she advised Oliveira that he had until February 17, 2023, to do so. On that day, Oliveira mailed a letter to the court, indicating that he would not be supplementing his application with further information. (*See* A. 35.)

Judge Cacace subsequently issued a thorough written decision and order, denying Oliveira's pistol-license application. (*See* A. 33-37.) Judge Cacace first observed that Oliveira's application materials had not candidly reported his involvement in the two incidents of physical violence that the WCDPS investigation had unearthed. (*See* A. 33-34.) Judge

Cacace further noted that Oliveira had failed to address the court's concerns regarding his conduct in those incidents despite having several opportunities to do so. (*See* A. 35-36.) Noting her "grave responsibility" for ensuring public safety, Judge Cacace reasoned that Oliveira's "inadequately explained involvement" particularly in the domestic-violence incident suggested that Oliveira had "an incompletely understood, yet not entirely novel, struggle with aggression and violence under circumstances that don't appear (without more information made available) to be related to his self-defense, and appear to be otherwise unjustified by the known attendant circumstances." (A. 36.) Judge Cacace concluded that, in the absence of mitigating information from Oliveira or his character references, Oliveira's involvement in the two violent incidents compelled the conclusion that he "does not possess the necessary character, temperament, judgment and maturity that is required for the proper issuance of a New York State Pistol/Revolver License." (A. 37.)

## 2. Oliveira's federal lawsuit against the judge who denied his license application

Oliveira initiated the present lawsuit against Judge Cacace in the U.S. District Court for the Southern District of New York in August 2023. (*See* A. 2.) Following Judge Cacace's retirement from the bench (*see* A. 20-21), Oliveira filed an amended complaint. The amended pleading named Supreme Court Justice Larry Schwartz, in his official capacity, as the sole defendant in place of Judge Cacace.[3] (*See* A. 6, 20.) Justice Schwartz was at that time one of a number of licensing officers for Westchester County. (A. 8.) However, in January 2025, Justice Schwartz was reassigned to preside over a civil docket in Rockland County.[4] As a result, his duties no longer include adjudicating applications for firearms licenses.

The amended complaint brought claims under 42 U.S.C. § 1983, alleging that the denial of Oliveira's application for a pistol license, along

_____

[3] While the caption on the cover page of Oliveira's opening appellate brief lists both Justice Schwartz and Judge Cacace as defendants, the operative complaint names Justice Schwartz as the sole defendant in this case. (*See* A. 6.)

[4] *See* New York Unified Ct. Sys., *2025 First Term Assignments* (Jan. 6, 2025); New York Unified Ct. Sys., *9th JD – Rockland County* (n.d.). (For sources available online, URLs appear in the Table of Authorities. All websites were last visited on June 18, 2025.)

11

with the disclosure requirements and discretion afforded to judges in deciding license applications, violated the Second and Fourteenth Amendments. (*See* A. 25-26.) As relief, the amended complaint requested, among other things, an order directing that Oliveira be issued a pistol license, and a declaration that the denial of Oliveira's application violated his constitutional rights. (*See* A. 26-27.)

### 3. The district court's dismissal of the lawsuit

Justice Schwartz moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Oliveira lacked Article III standing to bring this action against Justice Schwartz, and Oliveira's claims were barred by the Eleventh Amendment, judicial immunity as codified in section 1983 and under common law, and the *Rooker-Feldman* doctrine. (*See* ECF No. 19 at 16-33.)

The district court (Halpern, J.) granted Justice Schwartz's motion. (*See* A. 52-62.) The court first determined that all of Oliveira's claims were barred by sovereign immunity. (A. 57-60.) In so ruling, the court rejected Oliveira's argument that his claims could proceed under the exception to sovereign immunity recognized in *Ex parte Young*, 209 U.S. 123 (1908), which permits claims seeking prospective relief to enjoin state

executive officials from future enforcement of state laws that violate federal law. (A. 58-59.)

The district court explained that the *Ex parte Young* exception is unavailable in actions brought against state-court judges because judges are not executive officials and they generally do not enforce state laws. (*See* A. 59 (citing *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021)).) The court also rejected Oliveira's contention that the *Ex parte Young* exception remained available because Judge Cacace's denial of the pistol-license application was not undertaken in her judicial capacity, noting established precedent from this Circuit that "rulings on firearm license applications [are] judicial decisions." (A. 59 (quoting *Libertarian Party*, 970 F.3d at 125).) The district court added that the *Ex parte Young* exception was unavailable for the additional reason that the substance of the relief requested in Oliveira's complaint could not be characterized as prospective relief aimed at redressing an ongoing violation of federal law. (*See* A. 60.)

The court further determined that Oliveira's request for injunctive relief was independently barred by the judicial immunity codified in 42 U.S.C. § 1983, which prohibits federal courts from issuing an injunction

13

against a judicial officer "unless a declaratory decree was violated or declaratory relief was unavailable." (A. 60 (quoting 42 U.S.C. § 1983).) As the court observed, Oliveira does not allege that a declaratory decree was violated, and declaratory relief was available through an article 78 proceeding, *see* C.P.L.R. 7801 et seq.[5] (A. 60-61.) This appeal followed.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's judgment dismissing Oliveira's amended complaint on any of several independent grounds.

I.    The district court correctly determined that Oliveira's claims are barred by the Eleventh Amendment and by judicial immunity under 42 U.S.C. § 1983.

As to the Eleventh Amendment, because Justice Schwartz is a state-court judge who is sued solely in his official capacity, Justice Schwartz is entitled to the protections of sovereign immunity. While Oliveira attempts to fit his claims within the narrow exception to Eleventh Amendment

---

[5] After deeming the foregoing reasons sufficient to dispose of all of Oliveira's claims, the district court declined to address Justice Schwartz's alternative arguments, including those based on the *Rooker-Feldman* doctrine and lack of standing. (*See* A. 61.)

14

immunity recognized in *Ex parte Young*, that exception is inapplicable for two reasons.

*First*, the *Ex parte Young* exception does not apply to claims against state-court judges like Justice Schwartz. *Ex parte Young* only applies to actions seeking to prevent state executive officials from enforcing state laws that are contrary to federal law. But, as a state-court judge, Justice Schwartz is not an executive official and does not enforce New York's firearms laws. Oliveira's contention that Judge Cacace did not act in a judicial capacity when ruling on Oliveira's license application is squarely foreclosed by this Court's decision in *Libertarian Party*, which held that, in ruling on applications for firearms licenses, state-court judges perform a core judicial function that is entitled to immunity. Oliveira offers no basis to depart from that controlling precedent. And, in any event, Oliveira's claim that Judge Cacace was not acting in a judicial capacity is meritless. As this Court correctly held, Judge Cacace's licensing determination reflects the fundamental hallmarks of the judicial function, such as weighing evidence, finding facts, and making a decision by applying the relevant law to those facts. And, contrary to Oliveira's suggestion,

New York law is consistent with this Court's holding that such decision making is quintessentially judicial.

*Second*, the gravamen of Oliveira's amended complaint seeks retrospective relief to which *Ex parte Young* does not apply. The core relief that Oliveira requests (issuance of the denied license, and a declaration that the license denial violated Oliveira's Second Amendment rights) and the only injury to Oliveira alleged in the complaint (the license denial) involve past conduct and harm from a long-closed licensing proceeding rather than the future violations of federal law to which *Ex parte Young* may apply.

The district court also correctly determined that the express judicial immunity codified in 42 U.S.C. § 1983 separately bars Oliveira's claims for injunctive relief. Section 1983 is explicit that no action for injunctive relief lies under the statute "against a judicial officer for an act or omission taken in such officer's judicial capacity"—subject only to exceptions that are undisputedly inapplicable here. *See* 42 U.S.C. § 1983.

II.    This Court also may affirm the dismissal of the complaint on two independent grounds, not reached by the district court.

16

*First*, this Court lacks jurisdiction over Oliveira's claims under the *Rooker-Feldman* doctrine. In this suit, Oliveira effectively seeks to collaterally attack an unfavorable state-court judgment on his pistol-license application. It is well-established that Oliveira cannot invoke federal-court jurisdiction for this purpose; instead, his remedy was to challenge the judgment through an article 78 proceeding in state court.

*Second*, Oliveira lacks standing to bring this action against Justice Schwartz. No case or controversy exists between a litigant who brings a case and the judge who adjudicates the litigant's claims. Indeed, neither Judge Cacace nor Justice Schwartz was ever adverse to Oliveira, and they have no stake in the outcome of Oliveira's pistol-license proceedings. Moreover, the only concrete injury alleged in Oliveira's complaint—Judge Cacace's denial of Oliveira's application for a pistol license—plainly is not traceable to Justice Schwartz. And it is entirely speculative that Justice Schwartz might one day be assigned to decide a future licensing application filed by Oliveira. Indeed, Justice Schwartz presently does not adjudicate firearms-license applications at all.

# ARGUMENT

## POINT I

### THE DISTRICT COURT CORRECTLY DISMISSED THIS LAWSUIT AS BARRED BY THE ELEVENTH AMENDMENT AND JUDICIAL IMMUNITY UNDER SECTION 1983

### A. The Eleventh Amendment Bars All of Oliveira's Claims.

The district court correctly concluded that the Eleventh Amendment shields Justice Schwartz, as a state-court judge, from all of Oliveira's claims. The Eleventh Amendment prevents federal courts from entertaining claims against a State, as well as its agents, absent the State's express waiver or an abrogation of immunity by Congress. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). This rule extends to lawsuits brought against state-court judges in their official capacity. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122-23 (2d Cir. 2020), *abrogated on other grounds*, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Here, as Oliveira does not dispute, his complaint names Justice Schwartz as a defendant solely in his official capacity. (*See* A. 6.) In addition, the State has not waived its sovereign immunity, and Congress has not abrogated that immunity, for claims like Oliveira's

brought under 42 U.S.C. § 1983. *See, e.g., Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 31 (2d Cir. 1991).

Oliveira nevertheless erroneously contends that he may pursue his claims pursuant to the narrow exception to Eleventh Amendment immunity recognized in *Ex parte Young*, 209 U.S. 123 (1908), which applies to prospective claims that seek to enjoin "state executive officials from enforcing state laws that are contrary to federal law," *Whole Woman's Health*, 595 U.S. at 39. *See* Br. for Pl.-Appellant (Br.) at 16-27. Oliveira's reliance on *Ex parte Young* fails because state judges are not executive officials and do not enforce state laws. In addition, Oliveira's complaint does not seek the sort of prospective relief to which *Ex parte Young* applies.

### 1. The *Ex parte Young* exception does not apply to claims against state-court judges.

While *Ex parte Young* created an exception to Eleventh Amendment immunity to allow federal courts to address ongoing violations of federal law, the Supreme Court recognized that this exception does not apply to claims against state-court judges. *See* 209 U.S. at 163. That is because *Ex parte Young* applies only in circumstances where a state officer is "clothed with some duty in regard to the enforcement of the laws of the

19

state" and "threaten[s] and [is] about to commence" proceedings to enforce an unlawful state law. *See* 209 U.S. at 155-56. Judges "do not enforce state laws as executive officials might." *Whole Woman's Health*, 595 U.S. at 39. As a result, courts regularly dismiss claims purporting to seek prospective injunctive relief against state-court judges and quasi-judicial officials. *See, e.g.*, *id.*[6] As a judge in the New York Unified Court System (*see* A. 30, 39), Justice Schwartz is not a proper defendant in an action brought under *Ex parte Young*.

In attempting to evade this result, Oliveira principally argues that state-court judges do not act in a judicial capacity when deciding firearms-license applications (*see* Br. at 10-12, 17-19), and instead enforce the State's firearms-licensing regime as executive officials (*see* Br. at 19-21). Those contentions lack merit.

As the district correctly determined (A. 59), Oliveira's argument that state-court judges do not perform judicial functions when resolving firearms-license applications is squarely foreclosed by precedent from

---

[6] *See also Williams v. Parkih*, No. 24-3059, 2024 WL 5355086, at *2 (6th Cir. Sept. 4, 2024); *Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977, 980-81 (9th Cir. 2024); *Idlibi v. Burgdorff*, Nos. 23-838, 23-7384, 2024 WL 3199522, at *3 (2d Cir. June 27, 2024).

this Court. In *Libertarian Party of Erie County. v. Cuomo*, this Court held that state court rulings on firearms-license applications are "judicial decisions" subject to immunity. *See* 970 F.3d at 125. In so ruling, this Court explained that the functions performed by a licensing officer— applying the relevant requirements of § 400.00 to the facts specific to each application, and deciding the merits of those applications in a signed order—were quintessential adjudicative tasks. *See id.* at 123-24.

Oliveira does not attempt to distinguish *Libertarian Party* or dispute its application to his claims brought under *Ex parte Young*. Instead, Oliveira attacks this Court's reasoning. *See* Br. at 9-19. But a "published panel decision is binding on future panels unless and until it is overruled by the Court *en banc* or by the Supreme Court." *Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2019) (quotation marks omitted). Neither the Supreme Court nor this Court sitting en banc have overruled this Court's immunity holding in *Libertarian Party*. As a result, *Libertarian Party* controls.

Oliveira's arguments fail as a substantive matter in any event. As this Court already correctly determined in *Libertarian Party*, a judge's firearms-licensing determination is a judicial function. *Contra* Br. at 14,

21

17-19, 22-23. This Court has explained that "[t]he principal hallmark of the judicial function is a decision in relation to a particular case." *Bliven v. Hunt*, 579 F.3d 204, 211 (2d Cir. 2009). The role of a state-court judge when deciding a firearms-license application bears the quintessential marks of a judicial act—namely, the judge is required to weigh the evidence; make factual findings based on the applicant's submissions; apply the relevant criteria set out in Penal Law § 400.00(1); and either deny the application in a written order, or grant the application and issue the license, Penal Law § 400.00(4-b). (*See* A. 33-37.) Such activities fall safely within the core functions "normally performed by a judge." *Bliven*, 579 F.3d at 209-10 (quotation marks omitted); *see Libertarian Party*, 970 F.3d at 124-25.[7] Indeed, this Court has extended immunity to judicial activities far more removed from the essential decision-making functions of judges.

---

[7] In arguing to the contrary, Oliveira erroneously relies on the Eleventh Circuit's inapposite decision in *Baughcum v. Jackson*, 92 F.4th 1024 (11th Cir. 2024). *See* Br. at 18-19. While the *Baughcum* court held that judicial immunity did not apply to Georgia probate court judges when processing firearms-license applications, it did so because Georgia's firearms-licensing statute gave probate judges no discretion to deny a firearms license once the statutorily defined criteria were met. 92 F.4th at 1033. By contrast, New York judges are afforded the "bounded discretion" that is essential to the judicial function, in weighing whether an applicant possesses the requisite "good moral character" to qualify for a license. *See Antonyuk*, 120 F.4th at 976, 980-81.

*See, e.g.*, *Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997) (court-calendaring and docket-management decisions entitled to immunity).

Moreover, Oliveira is incorrect to suggest that Justice Schwartz "enforces the State's pistol license regime" as an executive official when deciding to grant or deny a licensing application. Br. at 21; *see also* Br. at 19-20. As Oliveira concedes (*see* Br. at 2; A. 19), New York enforces its licensing requirements by criminalizing the unlicensed possession of a firearm. *See* Penal Law §§ 265.01-265.04, 265.20(a)(3). Such criminal enforcement is conducted not by licensing officers, but rather by police officers, who may arrest and charge individuals suspected of violating the State's criminal weapons-possession laws, and district attorneys, who have the authority to prosecute those alleged violations. Oliveira identifies no enforcement action that Justice Schwartz could take (let alone one that he has in fact threatened to take) against Oliveira if he were suspected of violating Penal Laws §§ 265.01-265.04, and there is none. *See Ex parte Young*, 209 U.S. at 155-56; *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992) (for *Ex parte Young* exception to apply, "the prospect of state suit must be imminent").

23

*Whole Woman's Health*, on which Oliveira purports to rely (*see* Br. at 19-20)*,* in fact supports Justice Schwartz. In that case, the Supreme Court dismissed most defendants—including several state-court judges and the state Attorney General—on Eleventh Amendment immunity grounds from a lawsuit seeking to enjoin the enforcement of an abortion-related state law. In so ruling, the Court reasoned that the defendant state-court judges "do not enforce state laws" when they docket and hear cases, *see* 595 U.S. at 39, and the Attorney General had no identifiable enforcement authority under the statute, *id.* at 43-44. However, the Court allowed the suit to go forward against certain other officials because those officials were specifically authorized, and in some instances required, to prosecute the plaintiffs for purported violations of the state law. *Id.* at 45-46. Justice Schwartz's role under New York's licensing scheme bears no resemblance to the powers enjoyed by those defendant officials. Instead, his job is akin to the function performed by the state-court judges in that case—his duty is simply to hear and resolve the licensing applications that come before him. And like the Attorney General in that case, Justice Schwartz has no authority to enforce the State's criminal code.

24

Oliveira errs in suggesting that various features of New York's firearms-licensing regime make the licensing determination "non-judicial." *See* Br. at 18. As an initial matter, Oliveira is wrong to suggest that licensing determinations are unreviewable. *See* Br. at 23. In fact, as Oliveira concedes in his complaint (*see* A. 17-18), judicial review is available by initiating a proceeding under article 78. Had Oliveira commenced such a proceeding, a state appellate court would have assessed the merits of Judge Cacace's ruling and could have addressed Oliveira's constitutional challenge, with further review potentially available in the New York Court of Appeals. *See* C.P.L.R. 506(b)(1), art. 56, & 7803(3), 7804(b), (d), (e); *see also Matter of Unger v. Rozzi*, 206 A.D.2d 974, 974-75 (4th Dep't 1994). This Court has found even less fulsome appellate review mechanisms consistent with a judicial function subject to immunity. *See, e.g., Bliven*, 579 F.3d at 212, 214 (applying judicial immunity where appellate review was only available via administrative appeal to a panel of attorneys).

While Oliveira is correct that the authority to adjudicate applications for firearms licenses is derived from statute (i.e., Penal Law § 400.00) rather than common law (*see* Br. at 24), and that police officials

conduct firearms license determinations in certain parts of the State (*see* Br. at 16), those features of the licensing regime in no way demonstrate that licensing determinations are not functionally judicial. Many administrative officials, such as hearing officers and administrative law judges, exercise judicial functions and are therefore subject to immunity, although they have only statutory adjudicative authority. *See, e.g.*, *Butz v. Economou*, 438 U.S. 478, 513-14 (1978) (hearing examiners and administrative law judges entitled to immunity); *Romano v. Bible*, 169 F.3d 1182, 1187-88 (9th Cir. 1999) (Gaming Commission entitled to immunity when adjudicating disciplinary proceedings against licensees); *O'Neal v. Mississippi Bd. of Nursing*, 113 F.3d 62, 66-67 (5th Cir. 1997) (Board of Nursing entitled to immunity when overseeing licensing hearings). And police officials likewise may exercise judicial functions by statute, and thus be entitled to immunity. *See, e.g.*, *Walczyk v. Rio*, 496 F.3d 139, 164-65 (2d Cir. 2007) (police officers entitled to immunity when engaged in judicial function of setting temporary bail); *Montero v. Travis*, 171 F.3d

757, 760-61 (2d Cir. 1999) (corrections officials entitled to immunity when presiding over parole-revocation hearings pursuant to statute).[8]

Finally, contrary to Oliveira's suggestion, relevant New York law on the judicial function is consistent with federal law. While Oliveira relies on a handful of cases from a New York intermediate appellate court that passingly refer to firearms-licensing denials as "administrative" decisions (*see* Br. at 10-15), those cases do not address the question presented in *Libertarian Party* and here—i.e., whether a judge acts in a judicial capacity for immunity purposes. Instead, those cases merely confirm that firearms-licensing decisions are reviewed pursuant to article 78, and the cases refer in passing to the licensing decisions as "administrative" in the sense that they are reviewed pursuant to the article 78 procedures that typically apply to administrative agency decisions. *See Matter of Shuler*, 67 A.D.3d 1020, 1020 (2d Dep't 2009); *Matter of Panaro*

---

[8] Oliveira likewise misplaces his reliance on assumptions that license-application proceedings lack some of the formalities of state-court litigation and that judges may engage in "extrajudicial fact-finding" when deciding firearms-license applications. *See* Br. at 14, 22-23. The fact that a proceeding is "informal and *ex parte*" does not deprive an act of its judicial character. *Forrester v. White*, 484 U.S. 219, 227 (1988).

27

*(Cnty. of Westchester)*, 250 A.D.2d 616, 616 (2d Dep't 1998); *Matter of Cnty. of Westchester v. D'Ambrosio*, 244 A.D.2d 334, 334 (2d Dep't 1997).

Oliveira's reliance on the state-court decisions in *Matter of Goldstein v. Schwartz*, 185 A.D.3d 929 (2d Dep't 2020), and *Matter of Sibley v. Watches*, 194 A.D.3d 1385 (4th Dep't 2021), is similarly inapt. Those decisions do not question the judicial function of a judge when deciding a firearms-license application, and instead merely hold that Penal Law § 400.00 does not give a judge the authority to enjoin an applicant from reapplying for a license at a later date. *See Matter of Sibley*, 194 A.D.3d at 1389; *Matter of Goldstein*, 185 A.D.3d at 930. Indeed, both *Goldstein* and *Sibley* expressly acknowledge that judges act "in a quasi-judicial capacity" when deciding permit applications. *See Matter of Sibley*, 194 A.D.3d at 1389; *Matter of Goldstein*, 185 A.D.3d at 930.

Oliveira in any event errs in suggesting that this Court is "bound to defer" to state courts' determination regarding state officials' immunity from suit. *See* Br. at 12. Whether a defendant like Justice Schwartz is entitled to invoke the protections of immunity from a federal cause of action brought in federal court is a question of federal—not state—law. *See, e.g.*, *Bliven*, 579 F.3d at 212 (rejecting argument that New York

28

courts' characterization of proceedings as "administrative" rather than "judicial" controls the immunity inquiry).

### 2. The *Ex parte Young* exception does not apply to the relief sought here.

Oliveira's attempt to rely on the *Ex parte Young* exception to sovereign immunity also fails for the independent reason that his complaint does not seek the sort of prospective relief that falls within that exception. (*See* A. 59-60.) While "the doctrine of *Ex parte Young* permits federal courts to grant injunctions against state officials, . . . it only permits injunctions to prevent *future* violations of federal law." *See T.W. v. New York State Bd. of L. Exam'rs*, 110 F.4th 71, 94 (2d Cir. 2024) (emphasis added), *cert. denied*, No. 24-714, 2025 WL 1426672 (U.S. May 19, 2025). Relief that concerns a defendant's "previous actions" rather than "future conduct" is retrospective in nature and does not fall within the *Ex parte Young* exception. *See T.W.*, 110 F.4th at 91-92; *see also Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000).

Oliveira's amended complaint principally seeks (1) an injunction directing Justice Schwartz to issue the previously denied pistol license, and (2) a declaration that Judge Cacace's denial of his application for a

pistol license, and the consideration of his past conduct including a domestic-violence incident, violated his Second and Fourteenth Amendment rights. (*See* A. 27.) Such relief "is facially retrospective" because it is aimed at redressing past conduct and harm rather than future violations of federal law. *See T.W.*, 110 F.4th at 92.

Oliveira contends that his complaint also requests prospective relief in the form of a declaration that the good-moral-character and related disclosure requirements of Penal Law § 400.00 violate the Second Amendment. *See* Br. at 25. But to state a claim for such prospective relief, Oliveira was required to allege facts demonstrating that he faces a "probable threat" of harm from Justice Schwartz's *future* application of Penal Law § 400.00 to him. *See Salu v. Miranda*, 830 F. App'x 341, 347 n.4 (2d Cir. 2020); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983). Oliveira's complaint identifies no such threat of future harm; the only harm to him alleged in the complaint is the past denial of his license application.[9]

---

[9] In any event, this Court has already affirmed the validity of New York's firearms-licensing regime—including the good-moral-character and relevant disclosure requirements—as facially consistent with the

(*continued on the next page*)

In short, the gravamen of Oliveira's complaint is that Judge Cacace improperly denied his pistol-license application *in the past*. *See Vega v. Semple*, 963 F.3d 259, 282 (2d Cir. 2020) (it is "the substance rather than the form of the relief sought" that controls). Such retrospective relief does not fall within the exception recognized in *Ex parte Young*.

## B.    Judicial Immunity Under Section 1983 Bars Oliveira's Claims for Injunctive Relief.

The district court also correctly determined that the plain language of section 1983 independently bars Oliveira's claims for injunctive relief against Justice Schwartz. (*See* A. 60-61.) Section 1983 expressly provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity," injunctive relief is unavailable

---

Second Amendment. *See Antonyuk*, 120 F.4th at 981, 987-91. As a result, Oliveira's claim for prospective relief does not raise a substantial question of federal law and thus cannot serve as the basis for federal jurisdiction. *See generally In re Deposit Ins. Agency*, 482 F.3d 612, 623 (2d Cir. 2007) (*Ex parte Young* not applicable where alleged violation of federal law is "frivolous and insubstantial"); *see also Pearlman v. Vigil-Giron*, 71 F. App'x 11, 15-16 (10th Cir. 2003) (*Ex parte Young* inapplicable where alleged violation of federal law is squarely foreclosed by precedent).

"unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.[10]

Oliveira does not allege that any declaratory decree was violated in this case, or that declaratory relief was unavailable to him. And for the reasons already addressed, *supra* at 20-29, Oliveira cannot show that state-court judges do not act in a judicial capacity when ruling on a firearms-license application. Under these circumstances, Justice Schwartz is entitled to judicial immunity. *See Libertarian Party*, 970 F.3d at 123-25.

---

[10] Following the Supreme Court's decision in *Pulliam v. Allen*, in which the Court narrowed the common-law doctrine of judicial immunity to bar only claims for damages against state-court judges, *see* 466 U.S. 522, 541-42 (1984), Congress amended 42 U.S.C. § 1983 to "restore[] the doctrine of judicial immunity to the status it occupied prior to the Supreme Court's decision." S. Rep. 104-366, at *36 (1996); *see* Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 110 Stat. 3847. This broad judicial immunity serves the important functions of discouraging collateral attacks on judgments, promoting "appellate procedures as the standard system for correcting judicial error," and preserving "judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants." *Forrester*, 484 U.S. at 225-27.

## POINT II

### THIS COURT MAY AFFIRM THE DISMISSAL OF OLIVEIRA'S CLAIMS ON ALTERNATIVE GROUNDS

This Court also may affirm for two additional independent reasons raised below, but not reached by the district court. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 109, 117 (2d Cir. 2013) (the Court may "affirm the dismissal of a complaint on any basis supported by the record"). First, the relief that Oliveira seeks in this case is barred by the *Rooker-Feldman* doctrine. In addition, Oliveira lacks standing to bring his claims against Justice Schwartz.

### A.    Oliveira's Claims Are Barred by the *Rooker-Feldman* Doctrine.

The *Rooker-Feldman* doctrine establishes the rule that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). Underlying this doctrine "is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Id.* at 85. The doctrine applies to bar jurisdiction when (1) the plaintiff previously lost in state court, (2) the plaintiff complains of injuries caused by

a state-court judgment, (3) the plaintiff seeks the district court's review and rejection of the state-court judgment, and (4) the state-court judgment was rendered before the plaintiff commenced the district court proceeding. *See id.*

All four conditions are satisfied here. As already established, *supra* at 20-31, Judge Cacace denied Oliveira's application for a pistol license in a written order in a state-court judicial proceeding, and all of Oliveira's purported injuries derive from the denial of his application for a pistol license. (*See* A. 21-25, 33-37.) In addition, Oliveira's complaint seeks federal-court jurisdiction for the explicit purpose of reviewing and reversing Judge Cacace's license denial. (*See* A. 26-27 (requesting order directing Justice Schwartz "to issue the license applied for or, in the alternative, to accept a new application for a pistol license").) And it is undisputed that Oliveira's complaint was filed after Judge Cacace's decision on the licensing application. (*Compare* A. 37 (Decision & Order, dated Feb. 22, 2023), *with* A. 2 (Complaint, filed Aug. 22, 2023).) While the *Rooker-Feldman* doctrine applies only to those state-court decisions "that are judicial in 'nature and effect,'" *Mitchell v. Fishbein*, 377 F.3d 157, 167 (2d Cir. 2004) (quoting *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462,

478 (1983)), Judge Cacace's decision was judicial in nature and effect for all the reasons discussed above, see *supra* at 20-29.

In short, Oliveira seeks to use this lawsuit as a means of collaterally attacking an unfavorable state-court judgment. That, he cannot do. Under similar circumstances, courts within this Circuit have consistently rejected attempts by plaintiffs to invoke federal-court jurisdiction to review state-court firearms-licensing decisions. *See Paulk v. Kearns*, No. 21-cv-622, 2021 WL 1985884, at *2-3 (W.D.N.Y. May 18, 2021); *Fastag v. Kelly*, No. 04-cv-9037, 2005 WL 1705529, at *5-6 (S.D.N.Y. July 19, 2005).

## B. Oliveira Lacks Standing to Bring His Claims Against the Defendant State-Court Judge.

Article III of the U.S. Constitution "affords federal courts the power to resolve only 'actual controversies arising between adverse litigants.'" *Whole Woman's Health*, 595 U.S. at 39 (quoting *Muskrat v. United States*, 219 U.S. 346, 361 (1911)). For an actual controversy to exist, the plaintiff invoking federal-court jurisdiction must establish their standing to sue the defendant. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To demonstrate such standing, the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to challenged conduct of the

35

defendant, and (3) is likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Oliveira has not alleged that he has suffered an injury traceable to, and likely to be redressed by, Justice Schwartz, the only defendant named in the operative complaint.

To the extent that Oliveira is challenging the constitutionality of Penal Law § 400.00's licensing regime, Oliveira fails to allege an actual controversy involving Justice Schwartz. As the Supreme Court has explained, no controversy exists "between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute." *Pulliam*, 466 U.S. at 538 n.18. That is because the role of a judge is "to resolve controversies about a law's meaning or its conformance to the Federal and State Constitutions, not to wage battle as contestants in the parties' litigation." *Whole Woman's Health*, 595 U.S. at 40. Relatedly, a judge who presides over such a case has no "personal or institutional stake on either side of the constitutional controversy." *In re Justices of Sup. Ct. of P.R.*, 695 F.2d 17, 21 (1st Cir. 1982) (Breyer, J.). Thus, there is no actual controversy involving Justice Schwartz in his adjudicatory role. And Justice Schwartz has never played any role in the enforcement

36

of Penal Law § 400.00's licensing requirements after the initial licensing adjudication.[11] See *supra* at 23-24.

Moreover, to the extent that Oliveira is challenging the denial of a license to him, Justice Schwartz had no part in that determination. It was Judge Cacace—not Justice Schwartz—who denied Oliveira's license application. (*See* A. 20, 33.) And Oliveira fails to plead any facts explaining why Justice Schwartz may be substituted for Judge Cacace as a defendant. Indeed, as Oliveira concedes (*see* ECF No. 21 at 15), several state-court judges serve as licensing officers in Westchester County, and Oliveira has no application currently pending before Justice Schwartz.

In fact, Justice Schwartz does not presently preside over firearms-licensing applications at all. See *supra* at 11. As a result, it is entirely speculative that Justice Schwartz might one day decide (much less deny) any reapplication for a license that Oliveira filed, and equally speculative that any relief granted with respect to Justice Schwartz would remedy

---

[11] *See also See Reule v. Jackson*, 114 F.4th 360, 366 (5th Cir. 2024) (state-court judge did not enforce state statute restricting vexatious litigants' access to the courts and thus was not a proper defendant in constitutional challenge for Article III purposes); *Lindke v. Tomlinson*, 31 F.4th 487, 493 (6th Cir. 2022) (same, with respect to state's protection order statute).

Oliveira's harms. Such speculation cannot serve as the basis for Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

## CONCLUSION

This Court should affirm the district court's judgment.

Dated:   New York, New York
         June 18, 2025

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellee

By:   */s/ Anthony R. Raduazo*
      ANTHONY R. RADUAZO
      Assistant Solicitor General

BARBARA D. UNDERWOOD
  *Solicitor General*
PHILIP J. LEVITZ
  *Senior Assistant Solicitor General*
ANTHONY R. RADUAZO
  *Assistant Solicitor General*
    *of Counsel*

28 Liberty Street
New York, NY 10005
(212) 416-6159

38

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Emily Paule, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 7,364 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

_/s/ Emily Paule_