

**BELLANTONI**
L A W   F I R M

July 2, 2026

Hon. Catherine O'Hagan Wolfe
Clerk of the Court
U.S. Court of Appeals for
the Second Circuit
40 Foley Square
New York, New York 10007

      Re:    *Oliveira v. McCarty,* Case No. 25-485

Dear Ms. Wolfe,

Pursuant to this Court's Order dated June 11, 2026, Plaintiff-Appellant Antero Oliveira respectfully submits this supplemental letter brief addressing the application of *Kellogg v. Nichols*, 170 F.4th 20 (2d Cir. 2026) ("*Kellogg*"), reh'g en banc denied, No. 23-8093 (2d Cir. June 30, 2026), to this appeal.

## PRELIMINARY STATEMENT

The Amended Decision in *Kellogg v. Nichols* ("*Kellogg*") held that no case or controversy exists between upstate licensing officers and the applicants they deny. Mr. Oliveira respectfully submits that holding was incorrect, and preserves the objection that six judges shared in dissenting from the denial of rehearing en banc. Whether an upstate licensing officer is adverse to the applicant he denies is a threshold, categorical question under Article III. Either a case or controversy exists between the officer and the applicant, or it does not; that relationship does not depend on how the applicant frames his legal claim or on what relief he requests. Under Penal Law § 400.00(1), "no license shall be issued or renewed … except by the licensing officer" — the licensing officer is the only actor who enforces New York's licensing scheme against any given applicant. A challenge to the scheme is therefore always, at the same time, a challenge to the officer's application of it to a denied applicant.

Mr. Oliveira's First Amended Complaint illustrates why the facial/as-applied label cannot be the dividing line. Like the *Kellogg* plaintiffs, Mr. Oliveira seeks a declaration that New York's discretionary licensing scheme, Penal Law § 400.00, et seq., violates the Second Amendment and should be stricken "in its entirety." A26. But his complaint also seeks relief that runs directly to the Westchester County licensing officer's own conduct toward him: a declaration that Penal Law § 400.00(1)(b) is unconstitutional "facially and as applied to Plaintiff," with an injunction against its enforcement "generally and as applied to Plaintiff"; a declaration that the licensing officer violated Mr. Oliveira's own rights by exercising discretion to deny his application absent a statutory prohibitor and by considering dismissed charges and non-criminal convictions; a declaration and injunction reaching the

licensing officers' enforcement of Executive Law § 296(16)'s disclosure requirements; and an order directing the licensing officer to issue Mr. Oliveira's license or, in the alternative, to accept a new application and render a determination consistent with this Court's ruling. A26-27. Every one of those requests targets the same licensing officer performing the same function — denying Mr. Oliveira a handgun license under New York's criteria. At minimum, *Kellogg* does not require dismissal of Oliveira's officer-directed, prospective, as-applied claims, or his request for issuance or reconsideration of his own application.

Alternatively, even if that objection is not reached, this appeal falls within the reservations *Kellogg* itself made. The First Amended Complaint pleads an as-applied challenge, alleges ongoing injury from the licensing officer's denial and from the continuing operation of Penal Law § 400.00(1)(b) and Executive Law § 296(16), and seeks prospective officer-directed relief requiring the current Westchester County licensing officer to issue the license or accept and determine a new application consistent with this Court's ruling. At minimum, *Kellogg* does not require dismissal of those officer-directed, prospective, as-applied claims.

## I. ARTICLE III ADVERSITY IS A THRESHOLD QUESTION THAT DOES NOT DEPEND ON THE RELIEF REQUESTED OR ON WHETHER A CHALLENGE IS FACIAL OR AS-APPLIED

The case-or-controversy requirement asks whether the parties' dispute "touch[es] the legal relations of parties having adverse legal interests." *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 168 (2d Cir. 2016) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). That is a question about the relationship between the parties, fixed at the moment of the challenged conduct — here, the licensing officer's denial of Mr. Oliveira's application. It does not newly arise, or disappear, depending on whether the applicant later asks a federal court to strike the licensing scheme in its entirety, to enjoin the officer's future reliance on particular criteria, or to order him to reconsider the denial. An officer who denied an application either is adverse to the applicant he denied, or he is not; he cannot be adverse for purposes of one request arising from that denial and simultaneously not adverse for purposes of another request arising from the identical denial.

That is because the statutory licensing officers are the ***only*** officials who enforce New York's licensing scheme against any given applicant. Penal Law § 400.00(1) provides that "no license shall be issued or renewed … except by the licensing officer." They are a creation of the Legislature [Penal Law § 265.00(10)] and no one else has the authority to issue, deny, suspend, or revoke a handgun license.

A plaintiff who challenges the licensing scheme itself — as the *Kellogg* plaintiffs did, and as Mr. Oliveira also does, A26 — is necessarily challenging what the licensing officer did or would do under that scheme, because the officer is the sole mechanism through which the scheme is applied to any individual. There is no other official who enforces Penal Law § 400.00 against an upstate applicant. The label a plaintiff attaches to his claim — "facial" or "as-applied" — describes how he frames his legal argument; it does not change who denied him a license, or who would have to act to grant him relief.

New York's licensing officers — upstate and downstate alike — exercise "a core exercise of 'police powers,'" not "judicial power that traditionally requires a neutral magistrate." Sullivan Dissent at 17 (quoting *People ex rel. Lodes v. Dep't of Health of City of N.Y.*, 189 N.Y. 187, 192 (1907)). An upstate judge acting as a licensing officer "does not serve as a neutral arbiter any more than a downstate law-enforcement official exercising the same function does; instead, the judge acts as the functional

equivalent of an 'executive licensing official' tasked with controlling access to firearms." *Id.* at 18-19 quoting *Whole Woman's Health v. Jackson*, 595 U.S. 30, 45 (2021). That regulator-versus-applicant relationship exists when the licensing officer denies the application. It does not depend on what the applicant later asks a court to do about it.

This Circuit's own precedent confirms as much. *Bruen*, *Antonyuk*, *Libertarian Party*, and *Kachalsky* each adjudicated the Second Amendment merits of claims against upstate licensing judges, without any inquiry into whether the specific relief requested made the judge-defendant adverse to the plaintiff. *See*, Sullivan Dissent at 8-9 (collecting cases); *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 15-17, 71 (2022) (Justice Richard J. McNally, Jr.); *Antonyuk v. James*, 120 F.4th 941, 958, 1002-04, 1048 (2d Cir. 2024) (Judge Matthew J. Doran); *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122, 125 (2d Cir. 2020) (Justice M. William Boller and Judge Dennis M. Kehoe); *Kachalsky v. County of Westchester*, 701 F.3d 81, 84, 101 (2d Cir. 2012) (Justices Cohen, Lorenzo, and Holdman, and Judge Cacace). If adversity between an upstate licensing officer and a denied applicant turned on the relief requested, none of those cases would have been decided as they were.

Mr. Oliveira respectfully preserves his objection that *Kellogg*'s contrary holding was wrongly decided; a three-judge panel cannot overrule a prior panel decision absent intervening Supreme Court authority or in banc review, see *Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2019), and he raises the point here only to ensure it is preserved for further review. As explained below, however, *Kellogg*'s own express reservations independently permit this appeal to proceed without requiring the Court to revisit *Kellogg*'s categorical holding at all.

That preservation is not merely rhetorical. Plaintiff does not concede that Article III adversity can be defeated by state structuring of the licensing office, or that the federal forum Congress provided in § 1983 may be withdrawn from upstate applicants because New York assigned the same licensing function to judges in some counties and police officials in others. The arguments below show only that this Court can reverse or remand even under *Kellogg*'s reservations, without revisiting that broader objection.

## II. *KELLOGG*'S OWN RESERVATIONS INDEPENDENTLY PERMIT THIS APPEAL

### A. *Kellogg* Decided Threshold Jurisdictional Questions, Not Second Amendment Merits

*Kellogg* resolved two threshold jurisdictional questions and nothing more. First, it held that individual-capacity damages claims against an upstate licensing judge are barred by absolute judicial immunity under *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), because licensing decisions are "judicial" for immunity purposes. *Kellogg*, 170 F.4th at 25. Second, and separately, it held that official-capacity claims for declaratory and injunctive relief fail for lack of Article III adversity, reasoning that upstate licensing judges have no personal or institutional stake in a rejected applicant's claim. *Kellogg*, 170 F.4th at 26-31. Neither holding addresses whether Penal Law § 400.00(1)(b)'s discretionary "good moral character" standard, or Executive Law § 296(16)'s disclosure and consideration provisions, violate the Second Amendment. The panel said so directly: "We decide only" the threshold questions before it. *Kellogg*, 170 F.4th at 32-33.

3

### B. *Kellogg* Expressly Reserved the Relief-Specific, As-Applied Questions Presented in This Appeal

Even accepting *Kellogg*'s adversity holding on its own terms, the panel repeatedly cabined that holding and reserved the questions this appeal presents. The panel found that the *Kellogg* plaintiffs "chose the wrong target" because they sought broad facial relief — declaring the licensing scheme void and enjoining criminal enforcement generally — without asking the court to order the licensing officer to issue, reconsider, or reprocess their applications. *Kellogg*, 170 F.4th at 28. The panel expressly reserved whether a plaintiff seeking relief that runs directly to the officer's own denial, 170 F.4th at 32 n.12, or challenging "a component of the application process" rather than the scheme as a whole, id. at 32, might stand on different footing. It likewise reserved the as-applied question outright, citing *Antonyuk v. James*, 120 F.4th 941, 999 (2d Cir. 2024). *Kellogg*, 170 F.4th at 32. Those reservations matter here because this Court's June 11 Order specifically asks whether and how *Kellogg* impacts any as-applied challenge, and Mr. Oliveira squarely pleads one.

### C. Mr. Oliveira's Complaint Seeks Relief Directed at His Own Denial That *Kellogg*'s Plaintiffs Never Requested

Mr. Oliveira's First Amended Complaint falls within these reservations. Unlike the *Kellogg* plaintiffs, Mr. Oliveira seeks: a declaration that the licensing officer violated his own Second and Fourteenth Amendment rights by exercising discretion to deny his application absent a statutory prohibitor and by considering dismissed charges and non-criminal convictions, together with an injunction against such conduct, A26; a declaration and injunction directed at the licensing officers' enforcement of Executive Law § 296(16)'s disclosure and consideration requirements, A26; and an order directing the licensing officer to issue Mr. Oliveira's license or, in the alternative, to accept a new application and render a determination consistent with this Court's ruling, A27. This last request is precisely the redressability anchor *Kellogg* found missing. New York law makes clear that "no license shall be issued or renewed … except by the licensing officer." Penal Law § 400.00(1). A declaration and injunction striking the criteria the officer relied on to deny Mr. Oliveira's application "meaningfully redress[es] the applicant's injury by removing the allegedly unconstitutional barrier … between [the applicant] and the requested [license]." *Gutierrez v. Saenz*, 606 U.S. 305, 319 (2025); *see also* Sullivan Dissent at 25-26 n.6 (an injunction merely barring criminal enforcement "would not give [plaintiffs] the ability to lawfully possess handguns," because "not being prosecuted for illegally possessing a firearm is not the same as having a license to legally purchase a firearm").

The Court's June 11 Order reinforces that point. Pursuant to Rule 43(c)(2), Justice McCarty has been substituted for Justice Schwartz because the defendant is sued only in his official capacity. That substitution confirms the prospective nature of the relief: Mr. Oliveira does not seek retrospective relief from a retired licensing officer, but an order directed to the current statutory officer who holds the authority to issue, deny, or reconsider his license. The FAC alleges that a prior denial and related correspondence remain in the applicant's file and are used by successor licensing officers; the current officer can therefore redress the ongoing injury.

### D. Article 78 Does Not Defeat Federal Jurisdiction Or Apply The *Bruen* Standard

To the extent the concurring opinions from the denial of rehearing en banc suggest that Article 78 review supplies an adequate forum for Mr. Oliveira's constitutional claims, that suggestion does not defeat Article III, § 1983, or the officer-directed relief sought here. Article 78 is the mechanism by

4

which New York reviews administrative action; its use to review pistol-licensing determinations confirms that the licensing officer is not acting as a court adjudicating a case between parties. But Article 78 review of a licensing determination ordinarily asks whether the administrative decision was arbitrary and capricious under N.Y. C.P.L.R. § 7803(3) — a deferential inquiry into whether the decision had a rational basis in the record. That is not the federal text-history-and-tradition standard *Bruen* requires for Second Amendment claims. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17-19 (2022). A State cannot force an applicant into deferential state administrative review of a federal constitutional claim merely by assigning the licensing function to judges in some counties and police officials in others.

Nor is Mr. Oliveira required to exhaust Article 78 or any other state remedy before proceeding under 42 U.S.C. § 1983. It is black-letter law that a § 1983 plaintiff need not exhaust state administrative or judicial remedies before seeking relief in federal court. *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982); *Monroe v. Pape*, 365 U.S. 167, 183 (1961). The narrow exception for certain procedural due process claims, where the existence of an adequate post-deprivation state remedy can itself defeat the constitutional claim, *see Parratt v. Taylor*, 451 U.S. 527 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517 (1984), has no application to a substantive Second Amendment claim of the kind Mr. Oliveira brings. Article 78 may be one state law avenue to review a licensing determination; it is not a substitute for the federal forum Congress provided in § 1983.

## III.  *LIBERTARIAN PARTY*'S IMMUNITY HOLDING DOES NOT BAR MR. OLIVEIRA'S OFFICIAL-CAPACITY CLAIMS

*Kellogg*'s immunity holding, extending *Libertarian Party*, addresses individual-capacity damages claims against a licensing judge personally. But Mr. Oliveira sues the licensing officer solely in his official capacity for declaratory and injunctive relief, and the Court's Rule 43(c)(2) substitution of Justice McCarty for Justice Schwartz confirms that this appeal proceeds against the office, not the person. Judicial immunity is a defense to personal liability; it has never been understood to bar official-capacity claims for prospective relief, which proceed against the office rather than the officer. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985) (an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity); *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984) (judicial immunity does not bar prospective injunctive relief against a judge acting in an official capacity). Whatever force *Kellogg*'s immunity holding has for individual-capacity claims, it does not independently foreclose the official-capacity relief Mr. Oliveira seeks here.

## CONCLUSION

For the foregoing reasons, Mr. Oliveira's appeal need not be dismissed in its entirety even if the Court adheres to *Kellogg*'s holding on its own terms: at minimum, the relief directed at the licensing officer's denial of Mr. Oliveira's own application — including his request for issuance of the license — falls within *Kellogg*'s own reservations for relief-specific and as-applied claims. Mr. Oliveira further preserves his objection that *Kellogg*'s categorical adversity holding was wrongly decided, for the reasons six judges of this Court identified in dissenting from the denial of rehearing en banc. If that objection is correct, none of Mr. Oliveira's claims — including his facial challenge to Penal Law § 400.00 and Executive Law § 296(16) — are barred for want of Article III adversity.

5

We thank the Court for its consideration.


Very truly yours,


/s/ Amy L. Bellantoni
Amy L. Bellantoni
THE BELLANTONI LAW FIRM, PLLC
*Counsel for Plaintiff-Appellant*


cc: Counsel of Record (by ECF)