

**Office of the New York State**
**Attorney General**

**Letitia James**
**Attorney General**

July 2, 2026

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for
 the Second Circuit
40 Foley Square
New York, NY 10007

> Re:   *Oliveira v. McCarty*, No. 25-485

Dear Ms. Wolfe:

I represent the defendant-appellee in the above-captioned appeal. I write in response to the Court's June 11, 2026, order (ECF No. 46) directing the parties to submit supplemental briefs addressing the Court's decision in *Kellogg v. Nichols*, 170 F.4th 20 (2d Cir. 2026), and whether and how that decision impacts any as-applied challenge that Oliveira asserts in this case.

As explained below, Oliveira's constitutional claims are substantively indistinguishable from those that were raised in *Kellogg*. As a result, *Kellogg*'s holding that there was no justiciable article III case or controversy

there is dispositive here and compels affirmance. In any event, all of the factors that this Court identified in *Kellogg* as relevant to determining whether a state judge acts in a judicial capacity that precludes an article III case or controversy as against the judge decisively weigh against finding such a case or controversy here, regardless of the extent to which Oliveira's challenge is deemed "as applied." Moreover, *Kellogg*'s confirmation that judges deciding firearms licensing applications act in a judicial capacity requires affirmance here for at least three additional independent reasons: the defendant judge has both sovereign immunity and judicial immunity under 42 U.S.C. § 1983, and plaintiff's claim is barred by the *Rooker-Feldman* doctrine.

## RELEVANT BACKGROUND[1]

### A. This Lawsuit

Plaintiff Antero Oliveira commenced this § 1983 suit in the U.S. District Court for the Southern District of New York against the state judge who denied his application for a firearms license.[2] The operative complaint avers that the "discretionary" nature of New York's firearms licensing scheme, Penal Law § 400.00 et seq., and the offense-history disclosures required under Executive Law § 296(16), violate the Second and Fourteenth Amendments. (A. 25-26.) The complaint seeks declaratory and injunctive relief. (A. 26-27.)

In January 2025, the district court (Halpern, J.) dismissed the complaint after accepting defendant's arguments that all of Oliveira's claims are barred by sovereign immunity and the judicial immunity codified in 42 U.S.C. § 1983, and declining to reach defendant's additional

---

[1] The full background of this case is provided in the defendant's opening brief. See Br. for Appellee at 4-14.

[2] Oliveira's complaint initially named Westchester County Judge Susan Cacace, who denied Oliveira's license application, as the sole defendant. Upon her retirement from the bench, Oliveira amended his complaint to name Supreme Court Justice Larry Schwartz as the defendant. After Justice Schwartz was subsequently reassigned (see Br. for Appellee at 11), Supreme Court Justice James McCarty was substituted as the defendant-appellee in this case (*see* ECF No. 44).

arguments, including regarding the absence of a case or controversy under article III. (*See* A. 57-61, 61 n.6.) This appeal followed.

**B. The *Kellogg* Decision**

After the parties submitted their merits briefs in the present appeal, this Court issued its decision in *Kellogg v. Nichols*, involving nearly identical Second Amendment claims filed by the same counsel against another state judge. 149 F.4th 155, 158-60, 162-63 (2d Cir. 2025), *amended and superseded*, 170 F.4th 20 (2d Cir. 2026). In relevant part, *Kellogg* held that no article III case or controversy exists between a plaintiff challenging New York's firearms-licensing scheme and the state judge who denies the plaintiff's application for a firearms license pursuant to that scheme. *Id.* at 163.

Shortly thereafter, the parties submitted a joint letter to the Court, requesting that this case be submitted on the briefs without oral argument given the parties' agreement "that the Court's recent decision in *Kellogg* . . . control[s] the outcome in this case." ECF No. 40. This Court granted the parties' request. *See* ECF No. 43.

In March 2026, this Court issued an amended decision in *Kellogg*. That decision retained its core holding but bolstered the analysis in

support of the article III determination. *See* 170 F.4th at 26-31. As this Court explained, "a litigant challenging the constitutionality of a state law under § 1983 and a state court judge tasked with applying that law in a judicial proceeding are typically not adverse parties." *Id.* at 26. The "threshold consideration" in determining when such adversity exists is whether the judge is acting in a judicial capacity "or as an enforcer or administrator." *Id.* at 27 (quotation marks omitted).

Relying on its precedent from the judicial immunity context, *Libertarian Party of Erie County*, as instructive, the Court observed that a "functional approach" governs that judicial-capacity assessment. *Id.* at 25, 28; *see Libertarian Party of Erie Cnty v. Cuomo*, 970 F.3d 106 (2d Cir. 2020). In particular, *Kellogg* explained that courts are to consider whether (1) the judge may initiate proceedings under the challenged statute or is responsible for enforcing it; (2) the judge had a role in enacting the statute or otherwise has a personal or institutional stake in upholding it; (3) the judge's role involves an "administrative" or "ministerial" function; and (4) "traditional judicial safeguards" are available. 170 F.4th at 27-30 (quotation marks omitted). Applying those factors, this Court concluded that a state judge who denies an application for a firearms license and a plaintiff

challenging such a denial on constitutional grounds are "decidedly *not* parties having adverse legal interests." *Id.* at 28 (emphasis added) (quotation marks omitted).

Defendant subsequently filed a Rule 28(j) letter in this case, explaining that the amended *Kellogg* decision continues to compel affirmance. *See* ECF No. 45. Oliveira offered no response to that filing.

This Court later denied rehearing en banc in *Kellogg*. *See Kellogg v. Nichols*, No. 23-8093, 2026 WL 1872047 (2d Cir. June 30, 2026).

### ARGUMENT

As an initial matter, the claims that Oliveira raises here are nearly identical to those raised by the plaintiffs, represented by the same counsel, in *Kellogg*. Like Oliveira (see *supra* at 2-3), the *Kellogg* plaintiffs were denied firearms licenses by a state judge, and then challenged the constitutionality of those denials by bringing Second and Fourteenth Amendment claims against the judge in federal court. *See Kellogg*, 170 F.4th at 24; *see also* Compl. at 16-20, *Kellogg v. Nichols*, No. 23-cv-658 (N.D.N.Y. June 2, 2023), ECF No. 1. (*See* A. 20-22.) Indeed, the three causes of action asserted in Oliveira's operative complaint are mirror images of three causes of action that were pleaded in *Kellogg*. Both sets of claims take

6

aim at the purportedly "discretionary" nature of New York's licensing scheme, the "disclosure requirements under New York Executive Law § 296(16)," and the judges' license denials as violating the plaintiffs' Second and Fourteenth Amendment rights. (*See* A. 25-26.) *See* Compl. at 23-24, *Kellogg*, No. 23-cv-658. And the complaints seek similar relief in the form of declarations and orders enjoining state judges from using the discretion and disclosures permitted by statute in processing firearms licensing applications. (*See* A. 26-27.) *See also* Compl. at 25, *Kellogg*, No. 23-cv-658.

Because the claims raised here cannot be meaningfully distinguished from those in *Kellogg*, the Court's prior decision is controlling and compels dismissal for the same reasons. To be sure, Oliveira's complaint, unlike Kellogg's, makes a few references to its challenge to the licensing officer's discretion being both "facial[] and as applied to Plaintiff" (*e.g.,* A. 7, 25, 26), and Oliveira explicitly seeks an injunction requiring issuance of the previously denied license, in addition to the relief explicitly sought in *Kellogg* (A. 26-27). But those distinctions are immaterial here. As the Supreme Court has explained, the "facial" or "as applied" "label" a plaintiff assigns to its claims "is not what matters." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). Claims labeled "as applied" must satisfy the same

7

standards that would apply to a facial challenge where, as both here and in *Kellogg*, the claims and the relief sought "reach beyond the particular circumstances of the[] plaintiffs." *Id.*

In any event, regardless of the extent to which Oliveira's challenge might be considered "as applied," each of the factors that this Court set out in *Kellogg* for determining whether an article III case or controversy is present (see *supra* at 5 (citing *Kellogg*, 170 F.4th at 27)) weighs against finding such a case or controversy here.

*First*, the defendant judge here, as in *Kellogg*, has no authority to initiate proceedings under New York's firearms licensing statute, or to enforce the licensing requirements contained therein. *Kellogg*, 170 F.4th at 28-29. Indeed, as this court observed in *Kellogg*, while state judges "adjudicate the merits of the applications submitted to them, . . . they have *no* independent enforcement authority or role in criminal prosecutions to enforce the statute." *Id.* at 28 (emphasis added). The same is true of the defendant state judge here. See Br. for Appellees at 23-24.

*Second*, the defendant judge here, as in *Kellogg*, had no role in determining the criteria for issuing licenses or the disclosures an applicant must make. *Id.* at 29. Relatedly, if those criteria were to change or

be deemed unconstitutional, the defendant judge would have no "institutional interest in following [the] prior decision[]" denying Oliveira's firearms application. *Id.* at 29-30 (quoting *In re Justices of Sup. Ct. of P.R.*, 695 F.2d 17, 21 (1st Cir. 1982) (Breyer, J.)).

*Third*, the license adjudication process before the defendant judge here, as in *Kellogg*, is neither "ministerial" nor "administrative." *Id.* at 30. As explained (see Br. for Appellee at 22), the role of a state judge when deciding a firearms license application bears all the hallmarks of a judicial act, and involves the weighing of evidence, applying the relevant statutory criteria, and issuing a written order.

*Fourth*, traditional judicial safeguards are present. As in *Kellogg*, Oliveira was afforded a formal hearing in which he was represented by an attorney, and a well-reasoned decision explaining why his application was denied. 170 F.4th at 30. (*See* A. 33-37.) Importantly, that denial was subject to further judicial review in the form of an article 78 proceeding in state court. 170 F.4th at 30. See Br. for Appellees at 25.

Finally, even putting aside the absence of an article III case or controversy, Oliveira's claims are barred for multiple additional independent reasons—again, regardless of the extent to which those claims might

9

be considered "as applied." Although *Kellogg* does not directly address these additional grounds for affirmance, it does indirectly affirm that they serve as additional bars to Oliveira's claims by confirming that judges deciding firearms licensing applications act in a judicial capacity. *See* 170 F.4th at 25, 28. As explained in defendant's original appeal brief, the *Ex parte Young* exception to sovereign immunity does not apply to claims against judges acting in a judicial capacity (see Br. for Appellee at 19-29); § 1983 does not permit claims for injunctive relief against judges acting in a judicial capacity (see *id.* at 31-32); and the *Rooker-Feldman* doctrine does not permit collateral attacks on state court judgments in federal court (see *id.* at 33-35). For those reasons too, *Kellogg* confirms that affirmance of the dismissal of Oliveira's complaint is required.

## CONCLUSION

For the foregoing reasons, along with those stated in defendant's original brief, the Court should affirm the district court's judgment.

Respectfully submitted,

*/s/ Anthony R. Raduazo*

Anthony R. Raduazo
*Assistant Solicitor General*
(212) 416-6159

10